2014 CO 51

**In re: The COLORADO MEDICAL BOARD, Plaintiff**

**v.**

**The OFFICE OF ADMINISTRATIVE COURTS and Matthew E. Norwood, an Administrative Law Judge in the Office of Administrative Courts, Defendants**

**and**

**Polly Train, M.D., Defendant–Intervenor**

**Supreme Court Case No. 13SA209**

Supreme Court of Colorado.

June 23, 2014

Attorneys for Plaintiff: John W. Suthers, Attorney General, Jack M. Wesoky, Senior Assistant Attorney General, Allison R. Ailer, Assistant Attorney General, Denver, Colorado.

Attorneys for Defendants: John W. Suthers, Attorney General, John August Lizza, First Assistant Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado.

Attorneys for Defendant–Intervenor: Hershey Decker, Kari M. Hershey, Carmen N. Decker, Todd E. Likman, Lone Tree, Colorado.

Attorneys for Amicus Curiae COPIC Insurance Company: Jaudon & Avery LLP, David H. Yun, Jared R. Ellis, Denver, Colorado.

Attorneys for Amicus Curiae Colorado Defense Lawyers Association: Ruebel & Quillen, LLC, Jeffrey Clay Ruebel, Westminster, Colorado.

Attorneys for Amicus Curiae Colorado Medical Society: Martin Conklin P.C., John L. Conklin, Jerome R. Geraghty, Denver, Colorado.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 We issued a rule to show cause under C.A.R. 21 to decide whether the district court abused its discretion in holding that, as a matter of law, section 12–36.5–104(10)(a), C.R.S. (2013), protects professional review committee records from subpoena or discovery and admissibility in "civil suits," but not administrative proceedings. We hold that section 12–36.5–104(10)(a) protects the records of a professional review committee from all forms of subpoena or discovery. The statute further protects the records from admissibility in civil suits. We also hold that

the term "civil suit" includes administrative proceedings of an adjudicatory nature. Accordingly, the Colorado Medical Board's (the "Board") records are protected from subpoena or discovery and are not admissible in the administrative hearing regarding the denial of Dr. Polly Train's medical license, and the Board need not furnish to Train the records at issue in this petition.

¶ 2 Accordingly, we reverse the district court's order requiring the Board to comply with the discovery order entered by the Administrative Law Judge (the "ALJ"), and we remand this case to the district court with directions to return it to the ALJ for further proceedings consistent with this opinion.

**I.**

¶ 3 Train applied for a license to practice medicine in Colorado but was denied. She sought review of the Board's decision. An ALJ from the Office of Administrative Courts (the "OAC") held a hearing to decide whether Train was wrongfully denied a license. During discovery, Train requested certain Letters of Concern that contained information she considered relevant to the denial of her license. These Letters of Concern are private letters sent from the Board to licensed doctors when there is an issue that warrants discussion and warning, but not necessarily public disclosure and punishment.

¶ 4 The Board objected that the Letters of Concern were confidential records protected by the professional review privilege, also known as the peer review privilege, and it stated that it was "not willing to waive peer review confidentiality on all [Letters of Concern] even in a redacted form." The ALJ ordered the Board to produce the Letters of Concern from the last five years that involved matters similar to Train's. A corresponding protective order from the ALJ required that the Letters of Concern be treated as confidential and that all identifying information be redacted.[1]

1. Because we conclude that the Letters of Concern are protected under section 12–36.5–104(10)(a), it is inapposite whether the protective order would have been sufficient to alleviate the confidentiality concerns.

¶ 5 The Board sought review of the ALJ's order in the district court.[2] It asked the district court to enjoin the ALJ's order on the basis that the Letters of Concern were protected from subpoena or discovery. The Board again argued that it is a professional review committee, *see* § 12–36–118(10)(b), C.R.S. (2013), and that professional review committees possess a privilege that protects their records from subpoena or discovery and admissibility in any civil suit. § 12–36.5–104(10)(a). These Letters of Concern, the Board argued, are its "records" under section 12–36.5–104(10)(a), and as such, are not subject to subpoena or discovery. The district court concluded that, as a matter of law, section 12–36.5–104(10)(a) protected the Board's records from subpoena or discovery only in civil suits, which did not include administrative proceedings. The district court held that the ALJ did not violate the statute in ordering that the Letters of Concern be provided to Train.

¶ 6 The Board petitioned us for review. The Board argues that section 12–36.5–104(10)(a) provides for two distinct protections: (1) protecting the records from any form of subpoena or discovery; and (2) protecting the records from being admitted in a civil suit. The ALJ, OAC, and Train argue that the term "civil suit" limits the words "subpoena or discovery" and "admissible" in the statute such that the records are only protected from subpoena or discovery in a civil suit, and that the hearing regarding Train's medical license was not a civil suit.

## II.

¶ 7 We hold that section 12–36.5–104(10)(a) protects the records of a professional review committee from all forms of subpoena or discovery. The statute further protects the records from admissibility in civil suits. We also hold that "civil suit" includes administrative proceedings of an adjudicatory nature. Accordingly, the Board's records are protected from subpoena or discovery and are not admissible in the administrative hearing regarding the denial of Train's medical license, and the Board need not furnish the records.

### A. Standard of Review

¶ 8 Section 12–36.5–104(10)(a) provides as follows:

> Except as specified in paragraph (b) of this subsection (10), the records of an authorized entity, its professional review committee, and its governing board are not subject to subpoena or discovery and are not admissible in any civil suit.

The proper statutory construction of section 12–36.5–104(10)(a) is a question of law we review de novo. *See, e.g., Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006). When construing a statute, we ascertain and give effect to the General Assembly's intent, reading applicable statutory provisions as a whole in order to accord consistent, harmonious, and sensible effect to all their parts. *People in the Interest of W.P.*, 2013 CO 11, ¶ 11, 295 P.3d 514, 519; *Moffett v. Life Care Ctrs. of Am.*, 219 P.3d 1068, 1072 (Colo.2009). We liberally construe statutes to fully carry out the General Assembly's intent. § 2–4–212, C.R.S. (2013).

¶ 9 We give the language of the statute its commonly accepted and understood meaning. *Crandall v. City & Cnty. of Denver*, 238 P.3d 659, 662 (Colo.2010); *see also* § 2–4–101, C.R.S. (2013). If a statute is unambiguous, we give effect to the statute's plain and ordinary meaning and look no further. *Daniel v. City of Colo. Springs*, 2014 CO 34, ¶ 12, 327 P.3d 891 (citing *Springer v.*

2. The Board sought review of the ALJ's order pursuant to C.R.C.P. 106(a)(4) and section 24–4–106(8), C.R.S. (2013). Together, these provisions allow a party to first seek relief from a district court, C.R.C.P. 106(a)(4), and then seek to enjoin the conduct of an administrative proceeding, § 24–4–106(8). The Board, as a party to the administrative proceeding, *see Before the Colo. Med. Bd.: In the Matter of the Med. License of: Polly Fleet Train, M.D.*, Case No.: ME 2013–0003, was entitled to utilize these provisions.

We reject Train's argument that the Board is not an aggrieved party under section 24–4–106(1), C.R.S. (2013), and her corresponding argument that the Board did not have standing to initiate what Train characterizes as an improper interlocutory appeal to the district court. The ALJ's erroneous conclusion of law led to its decision to allow discovery of protected professional review records, rendering the Board an aggrieved party for the purpose of this case.

*City & Cnty. of Denver*, 13 P.3d 794, 799 (Colo.2000)). However, if the statutory language lends itself to alternative constructions or if its intended scope is unclear, it is considered ambiguous, and we may look beyond the statute's plain language to ascertain its meaning and effectuate its purpose. *Id.; see also* § 2–4–203, C.R.S. (2013).

### B. Construction of Section 12–36.5–104(10)(a)

¶ 10 We now consider the statutory provision at issue here, section 12–36.5–104(10)(a), interpreting it in light of the principles of statutory construction discussed above.

¶ 11 The General Assembly enacted the Medical Practice Act, § 12–36–101, et seq., C.R.S. (2013), to serve the interests of public health, safety, and welfare by protecting the public from the unauthorized, unqualified, and improper practice of medicine. § 12–36–102, C.R.S. (2013). To further that purpose, the General Assembly created the Board and gave it certain powers and duties. §§ 12–36–103 to 104, C.R.S. (2013). The Board is a professional review committee,[3] § 12–36–118(10)(b), C.R.S. (2013), and it is entitled to the protection of its records pursuant to section 12–36.5–104(10)(a).

¶ 12 In order to protect the public in Colorado, the Board is empowered to use a variety of different tools in determining whether someone, as an initial matter, should be allowed a license. *See, e.g.*, § 12–36–111, C.R.S. (2013). In addition, the Board is tasked with monitoring the conduct of its licensed doctors to review for regulated conduct. § 12–36–118(4)(c)(II.5), C.R.S. (2013). Relevant here, it is authorized to issue a confidential Letter of Concern to a licensee when it has noticed errant conduct that could lead to serious consequences if not corrected.

*Id.* A Letter of Concern is a private admonition sent directly to the licensed doctor with the purpose of directing the doctor to a corrective course of conduct. A Letter of Concern is a record of the Board, *see* § 12–36.5–102(7)(a), C.R.S. (2013), and it is protected under section 12–36.5–104(10)(a).

¶ 13 Legislatures typically provide for confidentiality of professional review committee proceedings and records in order to ensure that committee members are able to openly, honestly, and objectively study and review the conduct of their peers. *See Posey v. Dist. Ct.*, 196 Colo. 396, 586 P.2d 36, 37 (1978). In Colorado, one aspect of that protection aimed at empowering the Board is found in section 12–36.5–104(10)(a). The statute reads, "[T]he records of an authorized entity, its professional review committee, and its governing board are not subject to subpoena or discovery and are not admissible in any civil suit." § 12–36.5–104(10)(a). It also lists a handful of statutory exceptions. § 12–36.5–104(10)(b), C.R.S. (2013).[4] Here, we are tasked with ascertaining the meaning of "are not subject to subpoena or discovery and are not admissible in any civil suit," keeping in mind the General Assembly's intent in enacting this section. We are to construe the words of the statute liberally in order to effectively implement the General Assembly's intent. *Crandall*, 238 P.3d at 662; § 2–4–212.

¶ 14 We read the phrase "are not subject to subpoena or discovery and are not admissible in any civil suit" to contain two distinct clauses and to create two different statutory protections. First, the records are not subject to any form of subpoena or discovery. Second, the records are not admissible in any civil suit. The legislature's use of conjunc-

---

**3.** In fact, the General Assembly specifically amended the statute to make this clear following our decision in *DeSantis v. Simon*, 209 P.3d 1069 (Colo.2009), which held that the Board was not entitled to the statutory protection because it was not a professional review committee.

**4.** The OAC and the ALJ argue that the Letters of Concern fall under a statutory exception to the protection in section 12–36.5–104(10)(a). Specifically, they argue that section 12–36.5–104(10)(b)(VII), C.R.S. (2013), makes the records available for use. We do not find this argument

persuasive. The exception makes "the records ... subject to subpoena and available for use ... [b]y the medical board within the scope of its authority over licensed physicians and physician assistants." § 12–36.5–104(10)(b)(VII). The plain meaning of this exception requires that the use be within the scope of the Board's authority over licensed physicians, not its general licensing power. The ALJ was tasked with reviewing Train's denial of a license, placing this hearing outside the plain meaning of this exception.

tions; the meaning of the words subpoena, discovery, admissible, and civil suit; and the General Assembly's intent all demonstrate that the two protections are distinct.

¶ 15 We first discuss the use of conjunctions. Here, the statute reads, "not subject to subpoena or discovery and are not admissible in any civil suit." In other areas of the code, the General Assembly has provided similar protections, but phrased them differently. For instance, in section 25–3–109(4), C.R.S. (2013), the General Assembly established confidentiality for the records of health care facility quality management. The protection reads, "The records, reports, and other information ... of this section shall not be subject to subpoena or discoverable or admissible as evidence in any civil or administrative proceeding." *Id.* In section 25–3–109(4), the plain meaning indicates that the phrase "in any civil or administrative proceeding" was meant to modify the entire preceding series because the words all share the same conjunction. Comparing section 25–3–109(4) with section 12–36.5–104(10)(a) illustrates the conjunction options available to the General Assembly when crafting these protections. The use of "and" rather than "or" in section 12–36.5–104(10)(a) ("[The records are not] subject to subpoena *or* discovery *and* are not admissible in any civil suit.") is broader than the similar used in section 25–3–109(4). We conclude that the General Assembly intended to craft a broader protection in section 12–36.5–104(10)(a)—that the records are protected from any form of "subpoena or discovery," not just those used in "civil suits."

¶ 16 We now interpret the two protections provided by section 12–36.5–104(10)(a).

## 1. Not Subject to Subpoena or Discovery

¶ 17 First, we must attempt to ascertain the meaning of the words "subpoena or discovery." If the meaning is clear and unambiguous, we will look no further.

¶ 18 Compared to "subpoena," "discovery" is a more general term defined as the "the

act or process of finding or learning something that was previously unknown" and "[c]ompulsory disclosure, at a party's request, of information that relates to the litigation." *Black's Law Dictionary* 533 (9th ed. 2009). We recognize that discovery is a word ordinarily used during adjudicative proceedings. Further, a subpoena is a tool commonly used during discovery, but the use of a subpoena, generally speaking, is not limited to discovery during litigation.

¶ 19 In interpreting the words "subpoena or discovery," we presume that the legislature did not use language idly. *See Teller Cnty. v. Woodland Park*, 2014 CO 35, ¶ 10, 333 P.3d 55. Rather, the use of different terms signals the General Assembly's intent to afford those terms different meanings. *Id.* If the General Assembly did not intend for "subpoena" to have a meaning distinct from its use in discovery, its use here would be mere surplusage. *See Bennett Bear Creek Farm Water & Sanitation Dist. v. City & Cnty.* of Denver, 928 P.2d 1254, 1262–64 (Colo.1996) ("We must give effect to the meaning, as well as every word of a statute if possible."). Because we must give meaning to "subpoena," independent of being a form of discovery, we interpret the word in light of its context in the statute. In section 12–36.5–104(10)(a) "subpoena" must be read with "records." *See Bedford v. Johnson*, 102 Colo. 203, 78 P.2d 373, 376 (1938) (applying the doctrine of *noscitur a sociis*, which requires the meaning of words to be ascertained by those with which they are associated). Relevant to documents (records being documents), Black's Law Dictionary defines "subpoena" as, "[t]o order the production of (documents or other things) by subpoena duces tecum." *Black's Law Dictionary* 1563 (9th ed. 2009).

¶ 20 Subpoenas are employed in a variety of proceedings, and we therefore conclude that in section 12–36.5–104(10)(a) the General Assembly intended to protect these records from all forms of subpoena, not just those used during discovery.[5] Our interpretation

5. For instance, in section 2–3–107(1), C.R.S. (2013), the General Assembly has empowered the State Auditor and the Legislative Audit Committee to "subpoena witnesses, take testimony under

oath, and to assemble records and documents, by subpoena duces tecum or otherwise." Even further, this specific provision grants the State Auditor the ability to subpoena the records of any

of "subpoena" in section 12–36.5–104(10)(a) is buttressed by the statutory exceptions to the protection. Section 12–36.5–104(10)(b) says that "the records are subject to subpoena and available for use" in a variety of specific areas, some of which are not remotely related to a civil suit. For instance, the Colorado Department of Public Health and Environment ("CDPHE") can subpoena the records of the professional review committee "in accordance with its authority to issue or continue a health facility license or certification for an authorized entity." § 12–36.5–104(10)(b)(IV), C.R.S. (2013). This use by the CDPHE bears no relation to a "civil suit," and if "civil suit" were meant to limit "subpoena or discovery," then this particular exception for the CDPHE would be unnecessary. Additionally, section 12–36.5–104(10)(b)(V), C.R.S. (2013), provides an exception for "CMS in accordance with its authority over federal health care program participation by an authorized entity." Again, this exception is not related to a civil suit. As we discussed above, we must attempt to provide meaning to all parts of the statute, and interpreting "civil suit" to limit "subpoena or discovery" would render these exceptions superfluous.

¶ 21 Because we are tasked with liberally construing the words of the statute to carry out the General Assembly's intent, we read "subpoena or discovery" independent of "civil suit" and hold that the records of the professional review committee are protected from all forms of subpoena or discovery, including the discovery process used in the administrative hearing in this case. This promotes the General Assembly's intent to empower the Board's issuance of confidential Letters of Concern to individual doctors as a corrective and precautionary device to protect the public from improper medical practice. *See* § 12–36–118(4)(c)(II.5).

### 2. Not Admissible in Any Civil Suit

¶ 22 Next, we must interpret the words "not admissible in any civil suit." If

the meaning is clear and unambiguous, we look no further. Admissibility, although not disputed by the parties here, concerns "[t]he quality or state of being allowed to be entered into evidence in a hearing, trial, or other official proceeding." *Black's Law Dictionary* 53 (9th ed. 2009). The parties disagree as to whether "civil suit" includes an administrative proceeding. We conclude that the General Assembly intended for "civil suit" to include certain administrative proceedings that are adjudicatory in nature, like the hearing in this case.

¶ 23 Black's Law Dictionary does not define "civil suit" as one phrase. However, it defines "civil" as "[o]f or relating to private rights and remedies that are sought by action or suit, as distinct from criminal proceedings." *Id.* at 279. It defines "suit" as "[a]ny proceeding by a party or parties against another in a court of law." *Id.* at 1572. Finally, it defines "court of law" as "any judicial tribunal that administers the laws of a state or nation." *Id.* at 407. Read together, these definitions clearly include an administrative proceeding as a "civil suit" when the purpose of the administrative proceeding is to administer the laws of the state for the purpose of the enforcement of rights and remedies.

¶ 24 A definitional examination of "administrative proceeding" or an "administrative hearing" is also helpful for determining whether the plain and ordinary meaning of those terms precludes association with "civil suit." Black's Law Dictionary defines "administrative proceeding" as "[a] hearing, inquiry, investigation, or trial before an administrative agency, usually adjudicatory in nature...." *Id.* at 51. An "administrative hearing" is "[a]n administrative-agency proceeding in which evidence is offered for argument or trial." *Id.* Finally, an "administrative-law judge" is "[a]n official who presides at an admin-

department, institution or agency, regardless of any other provision of law protecting those records. § 2–3–107(2)(a), C.R.S. (2013). So as not to completely undermine the other areas where records are protected, this section forbids the publication or release of confidential or protect-

ed information. § 2–3–107(2)(b), C.R.S. (2013). The subpoena power provided to the State Auditor and the Legislative Audit Committee is entirely different from the power available in adjudicative proceedings and serves a different purpose.

istrative hearing and who has the power to administer oaths, take testimony, rule on questions of evidence, and make factual and legal determinations." *Id.* None of these definitions suggest that an administrative hearing is not a civil suit.

¶ 25 The rules governing the hearing in this case also support the construction of the term "civil suit" within the meaning of this statute to include adjudicatory administrative proceedings. For instance, the Colorado Rules of Civil Procedure apply to matters before an ALJ. 1 Colo.Code Regs. 104–1:15 (2013). This code section explains, "[W]henever the word 'court' appears in a rule of civil procedure, that word shall be construed to mean an administrative law judge." *Id.* Additionally, the Colorado Rules of Evidence apply at the hearing. 1 Colo.Code Regs. 104–1:14 (2013). Colorado's Administrative Procedure Act authorizes ALJs to exercise procedural authority, tracking the authority employed in court proceedings. *See* § 24–4–105(4), C.R.S. (2013). In this case, Train requested the administrative hearing to exercise her right to seek review of the Board's denial of her medical license. The ALJ was empowered, although not required, to find that Train was erroneously denied a medical license.

¶ 26 It makes little sense to construe the statute's protection of the Board's records against use in court adjudicatory proceedings, but to allow their use in administrative adjudicatory proceedings. In *Posey,* 586 P.2d at 38, in order to give effect to the General Assembly's intent to protect the records, we construed the term "civil suit" to mean any civil action. *See also Franco v. Dist. Ct.,* 641 P.2d 922, 930–31 (Colo.1982) (holding that professional review committee records are privileged from discovery in civil litigation except in a judicial review proceeding involving the discipline of a licensed physician). Similarly, we conclude here that the General Assembly intended "civil suit" to include adjudicatory administrative proceedings.

¶ 27 Accordingly, we conclude that the context and plain meaning of "civil suit" includes adjudicatory administrative proceedings, such as the hearing here, and the Letters of Concern that the Board issued to individual doctors are not admissible in the hearing before the ALJ.

### III.

¶ 28 We reverse the district court's order requiring the Board to comply with the discovery order entered by the ALJ, and we remand this case to the district court with directions to return it to the ALJ for further proceedings consistent with this opinion.[6]

6. We deny Train's request for attorney fees that she bases on the assertion the Board frivolously pursued this appeal.