The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 18, 2021

**2021COA34**

**No. 17CA0315, *People v. Tun* — Constitutional Law —
Fourteenth Amendment — Equal Protection; Crimes — DUI —
Prior Convictions; Regulation of Vehicles and Traffic — Alcohol
and Drug Offenses — Penalties for Traffic Offenses Involving
Alcohol and Drugs**

A division of the court of appeals considers whether a

defendant's constitutional right to equal protection is violated when

he is convicted of a felony under the DUI statute, section

42-4-1301, C.R.S. 2020, and sentenced in accordance with the

provisions of section 42-4-1307(6.5), C.R.S. 2020. *See* U.S. Const.

amend. XIV; Colo. Const. art. II, § 25.

The division rejects the defendant's argument that conviction

under section 42-4-1301 violates his right to equal protection

because section 42-4-1301 and section 42-4-1307(6.5) prohibit and

punish the same conduct as section 42-4-1307(6), but allow the

imposition of more serious penalties. It notes that section 42-4-1307(6) applies, "[e]xcept as provided in section 42-4-1301(1)(a), (1)(b), and (2)(a)." Moreover, when used as a basis for felony charges, section 42-4-1301 requires a different minimum number of convictions than section 42-4-1307(6). In addition, section 42-4-1301 requires that prior qualifying convictions arise from "separate and distinct criminal episodes" while section 42-4-1307(6) does not. Finally, section 42-4-1307(6) contains qualifying prior offenses that are not contained in section 42-4-1301.

Nonetheless, pursuant *Linnebur v. People*, 2020 CO 79M, the division reverses the defendant's convictions for felony DUI and felony DUI per se. The division also reverses the defendant's conviction for failure to display proof of insurance and affirms his remaining convictions.

Court of Appeals No. 17CA0315
Arapahoe County District Court No. 15CR2977
Honorable Natalie T. Chase, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Pedro Reynauldo Tun,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE RICHMAN
Freyre and Grove, JJ., concur

Announced March 18, 2021

Philip J. Weiser, Attorney General, Brian M. Lanni, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica A. Pitts, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Appellant, Pedro Reynauldo Tun, appeals a judgment of conviction finding him guilty of felony driving under the influence (DUI) and felony DUI per se, failing to display proof of insurance, driving an unregistered vehicle, driving after revocation prohibited (DARP), and driving under restraint (DUR).  We previously issued an opinion affirming all of Tun's convictions except for failure to display proof of insurance.  *People v. Tun*, (Colo. App. No. 17CA0315, Mar. 12, 2020) (not published pursuant to C.A.R. 35(e)).  However, based on its decision in *Linnebur v. People*, 2020 CO 79M, the supreme court vacated our opinion and remanded the matter for reconsideration.  *Tun v. People*, (Colo. No. 20SC322, Jan. 11, 2021) (unpublished order).  We now reverse Tun's convictions for felony DUI and felony DUI per se based on *Linnebur*.  We also reverse his conviction for failing to display proof of insurance, affirm his remaining convictions, and remand this case for further proceedings consistent with this opinion.

## I.    Background

¶ 2    In October 2015, Tun was pulled over by Officer Jeffrey Olson because there was no license plate or temporary permit on his car. He admitted to Officer Olson that the car was not registered and

said that it belonged to his son. He did not produce a license or proof of insurance when Officer Olson requested them.

¶ 3        Officer Olson noticed the smell of alcohol coming from Tun's car. He also observed that Tun had watery, bloodshot eyes, and his movements were slower than those of a sober person. Tun admitted that he had consumed two beers that day. As a result, Officer Olson called for a DUI enforcement officer. When the officer arrived, Tun admitted to consuming ten to fifteen beers throughout the day, and he agreed to perform roadside sobriety maneuvers. He did not perform them as a sober person would, and he was placed under arrest. A blood alcohol test performed approximately one and a half hours after Tun was stopped revealed that his blood contained .26 grams of alcohol per 100 milliliters. In addition, Tun's driving record indicated that his license had been subject to various restraints since 1999, and it had been revoked in 2013 due to his status as a habitual traffic offender.

¶ 4        The People charged Tun with felony DUI and felony DUI per se, a violation of section 42-4-1301(1)(a), (2)(a), C.R.S. 2020, failing to present proof of insurance, a violation of section 42-4-1409(3), C.R.S. 2020, driving an unregistered vehicle, a violation of section

2

42-3-121(1)(a), C.R.S. 2020, DARP, a violation of section

42-2-206(1)(a), C.R.S. 2020, and DUR, a violation of section

42-2-138(1)(d), C.R.S. 2020.  He was convicted as charged.

## II.    Felony DUI and DUI Per Se

### A.    Prior Convictions

¶ 5     If a defendant is convicted of DUI or DUI per se after he has three or more prior drug- or alcohol-related driving convictions, his misdemeanor DUI or DUI per se convictions become felonies. § 42-4-1301(1)(a), (2)(a).  The People alleged that Tun had three prior DUI convictions.  Before trial, Tun filed a motion to have his alleged prior convictions tried to the jury.  He argued that prior convictions are elements of felony DUI and felony DUI per se and therefore must be proved to a jury beyond a reasonable doubt.

¶ 6     The trial court denied the motion and, after the jury rendered guilty verdicts on the misdemeanor DUI and DUI per se charges, his alleged prior convictions were tried to the court.  The court found that Tun had the required number of prior convictions.  His DUI and DUI per se convictions were therefore elevated from misdemeanors to felonies.

¶ 7    Tun first contends that the trial court erroneously denied his motion to treat prior qualifying convictions as elements of the charged felonies.  He further contends that the trial court erred by requiring proof by a preponderance of the evidence instead of proof beyond a reasonable doubt.  We agree.

¶ 8    As the supreme court made clear in *Linnebur*, ¶ 2, to obtain a felony DUI conviction, the People must prove to a jury, beyond a reasonable doubt, that (1) the defendant drove a "motor vehicle or vehicle"; (2) while "under the influence of alcohol or one or more drugs"; and (3) he had at least three prior drug- or alcohol-related driving convictions.  § 42-4-1301(1)(a).  Similarly, to obtain a DUI per se conviction, the jury must determine, beyond a reasonable doubt, that (1) the defendant drove a "motor vehicle or vehicle"; (2) when the defendant's blood alcohol content was "0.08 or more at the time of driving or within two hours after driving"; and (3) he had at least three prior drug- or alcohol-related driving convictions.  § 42-4-1301(2)(a); *Linnebur*, ¶ 2.  The trial court therefore erred by not permitting the jury to determine, beyond a reasonable doubt, whether Tun had three prior DUI convictions.

¶ 9     Based on this error, we reverse Tun's felony DUI and felony DUI per se convictions.  On remand, if the People do not elect to retry Tun on charges of felony DUI and felony DUI per se, the trial court shall re-enter convictions for misdemeanor DUI and misdemeanor DUI per se and sentence him accordingly.  Because the *Linnebur* court declined to resolve whether double jeopardy would bar retrial, we express no opinion on that issue.  *Linnebur*, ¶ 32.

## B.     Equal Protection

¶ 10    Tun next contends, for the first time on appeal, that his felony convictions under the DUI statute, § 42-4-1301, and sentencing pursuant to section 42-4-1307(6.5), C.R.S. 2020, violate his right to equal protection.

¶ 11    Tun argues that, under the applicable statutory scheme, if a defendant has four or more DUI, driving while ability impaired (DWAI), or DUI per se convictions, he has "two or more prior convictions" under section 42-4-1307(6), but he also has "three or more prior convictions" under section 42-4-1301, permitting the People to bring felony charges if they choose to do so.  Thus, at the prosecutor's discretion, a defendant with four or more qualifying

5

convictions may be punished as a felon under section 42-4-1307(6.5) or as a misdemeanor offender under section 42-4-1307(6), which imposes lighter penalties. He contends the imposition of different penalties for the same conduct violates equal protection. *See* U.S. Const. amend. XIV; Colo. Const. art. II, § 25.

¶ 12    In our original opinion in this case, we relied on *People v. Quezada-Caro*, 2019 COA 155, ¶ 39, to reject Tun's equal protection arguments. After our opinion was released, *Quezada-Caro* was vacated by the supreme court on other grounds. *People v. Quezada-Caro*, (Colo. No. 19SC962, Dec. 21, 2020) (unpublished order). Nonetheless, our conclusion that the plain language of these statutes undermines Tun's argument has not changed. *See Colo. Med. Bd. v. Off. of Admin. Cts.*, 2014 CO 51, ¶ 9 (noting that a court need not look further when giving effect to the plain and ordinary meaning of unambiguous statutory provisions).

¶ 13    Section 42-4-1307(6) applies, "[e]xcept as provided in section 42-4-1301(1)(a), (1)(b), and (2)(a)." § 42-4-1307(6)(a). We read the word "except" to mean that if there is a conflict between section 42-4-1307(6) and the identified subsections of section 42-4-1301, the identified subsections are controlling.

¶ 14    Moreover, in several ways, the statutory scheme carefully carves out exceptions to demarcate the various degrees of DUI offenses so that one cannot be charged under multiple sections for the same conduct.

¶ 15    First, as noted above, section 42-4-1307(6) permits misdemeanor conviction and sentencing on the basis of two or more prior qualifying convictions while section 42-4-1301 only permits felony conviction and sentencing on the basis of three or more prior qualifying convictions.  Thus, the minimum number of convictions required is different.

¶ 16    Second, section 42-4-1301 requires that the qualifying prior convictions arise from "separate and distinct criminal episodes" while section 42-4-1307(6) does not.  Thus, for example, while a defendant could receive an aggravated sentence under section 42-4-1307(6) for a single criminal episode involving a DUI and three counts of vehicular homicide, such a defendant could not be subject to felony DUI charges under section 42-4-1301(1)(a) because there were not three separate and distinct criminal episodes.

¶ 17    Third, section 42-4-1307(6) contains, as additional qualifying prior offenses, aggravated driving with a revoked license[1] and DUR. But these prior offenses do not qualify as prior convictions for felony DUI, DWAI, or DUI per se purposes.  *See* § 42-4-1301(1)(a), (1)(b), (2)(a).

¶ 18    For the foregoing reasons, we reject Tun's contention that the misdemeanor and felony DUI statutes punish identical conduct. They are distinct.  The felony DUI statute therefore does not violate equal protection principles.

### III.    Sufficiency of the Evidence of Prior Convictions

¶ 19    Tun next contends that the trial court erred by concluding he had three prior DUI convictions because (1) one of the prior convictions was subject to collateral attack and (2) the People did not sufficiently link Tun to the three prior convictions at issue. Thus, Tun challenges the sufficiency of the evidence regarding his prior convictions.

¶ 20    In our original opinion, we concluded that the trial court properly applied a time bar to Tun's attempted collateral attack.  We

---

[1] As the crime existed before August 5, 2015

further concluded that, under the preponderance of the evidence standard, the People had presented sufficient evidence that Tun had been convicted of three prior DUIs.

¶ 21    These conclusions may still be relevant to future proceedings in the trial court should the People choose to retry Tun for felony DUI and felony DUI per se based on the same evidence.  However, the People have not yet chosen to do so, and the trial court has not yet ruled on the issues raised by such a choice.  Under *Linnebur*, before the People can try Tun for felony DUI and felony DUI per se, they must first demonstrate that retrial is not barred by constitutional double jeopardy limitations.  *Linnebur*, ¶ 32.  Only if they prevail on this issue in the trial court can they attempt to prove, beyond a reasonable doubt, that Tun has three prior DUI convictions.

¶ 22    Because the trial court has not yet ruled on the double jeopardy challenge that will surely be raised on retrial and the People have not yet attempted to prove, beyond a reasonable doubt, that Tun has at least three prior qualifying convictions, any opinion on these issues would be advisory only.  We must avoid issuing such opinions.  *See People in Interest of Vivekanathan*, 2013 COA

143M, ¶ 14. We therefore decline to address the sufficiency of the evidence of prior convictions and the merits of any collateral attack that Tun might choose to bring on retrial.

## IV. Constructive Amendment

¶ 23 Tun next contends that his conviction for failure to display proof of insurance should be reversed because while the information charged him with failure to display proof of insurance pursuant to section 42-4-1409(3), and the court read the proper charge at the beginning of trial, the jury was ultimately instructed on the charge that he operated a motor vehicle without insurance under 42-4-1409(2). He alleges that this discrepancy was a constructive amendment to the information.

¶ 24 As relevant here, subsection (3) of the statute is violated when, upon request by a peace officer during a traffic investigation, a motor vehicle operator fails to "present to the requesting officer immediate evidence of a complying policy or certificate of self-insurance in full force and effect as required by law." However, the instruction given to the jury stated:

> The elements of the crime of Compulsory Insurance are:

10

> (1) That the defendant,
>
> (2) in the State of Colorado, at or about the date and place charged,
>
> (3) operated a motor vehicle,
>
> (4) on a public highway of this state,
>
> (5) without a complying policy or certificate of self-insurance in full force and effect as required by law.

The jury was further instructed that "testimony that an operator of a motor vehicle failed to immediately present evidence of a complying policy or certificate of self-insurance . . . when requested to do so by a peace officer, gives rise to a permissible inference that the defendant did not have such a policy or certificate." These instructions are pertinent to subsection (2) not subsection (3) of section 42-4-1409. *See* COLJI-Crim. 42:18, 42:19.SP (2019). They address a failure to *have* insurance, not a failure to *present proof* of insurance.

¶ 25     The verdict forms reflect that the jury convicted Tun of operating a motor vehicle without insurance under subsection (2), not a failure to present insurance upon request under subsection

(3).  However, the judgment of conviction was entered under subsection (3).

¶ 26     The People concede that a constructive amendment occurred. We agree and accept the concession.  "A constructive amendment is a variance between the charge contained in the information and the charge of which a defendant is convicted that 'changes an essential element of the charged offense and thereby alters the substance of the [information].'"  *People v. Riley*, 2015 COA 152, ¶ 11 (alteration in original) (quoting *People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996)).  Here, the charge stated in the information required the People to prove that Tun failed to present insurance when requested to do so.  However, the jury instruction given at trial removed that element and added another, requiring the People to prove instead that Tun operated an uninsured vehicle.

¶ 27     While the parties agree that the trial court erred, they disagree on the standard of reversal applicable to a constructive amendment. Tun contends that all constructive amendments are per se reversible as structural error, while the People contend that the plain error standard is applicable.  We need not decide this issue

because we conclude that the error was plain and reverse the judgment of conviction on this charge.[2]

¶ 28    To constitute plain error, an error must be so obvious and substantial that it undermines the fundamental fairness of the trial and casts serious doubt on the reliability of the judgment of conviction. *People v. Weinreich*, 119 P.3d 1073, 1078 (Colo. 2005). Here, the challenged instruction's departure from the crime charged in the information is both obvious and substantial. Neither of the elements altered by the amendment is a subset of the other, and the proof required is materially different.

¶ 29    A driver may fail to present proof of insurance although he actually has it.[3] Conversely, he may drive while uninsured but, unless requested to do so, he is under no obligation to present proof

---

[2] In *People v. Carter*, 2021 COA 29, ¶ 48, a division of this court concluded that constructive amendments are subject to a plain error, rather than a structural error, standard of reversal. We decline to engage in this analysis because a more limited analysis will suffice. *See People v. Perez*, 2020 COA 83, ¶ 28 (noting that we are not required to follow the decisions of other divisions of this court).

[3] The fact that a driver who fails to present proof of insurance is, in fact, insured is a defense to this crime if the driver produces proof that he was insured at the time. *See* § 42-4-1409(6), C.R.S. 2020.

13

of insurance to a peace officer who stops him. Consequently, he may be convicted of driving while uninsured without proof that he failed to present proof of insurance upon request. *People v. Martinez,* 179 P.3d 23, 25 (Colo. App. 2007). For this reason, we conclude that subsection (3) is not simply a lesser included offense of subsection (2), because proof of all the elements of subsection (2) does not necessarily constitute proof of the elements of subsection (3). *See Riley,* ¶ 16. Because Tun was required to defend against an element that was not included in the original charge, and he did not have notice he would be required to do so, he was prejudiced. We conclude that the reliability of the judgment of conviction is in serious doubt and determine that the error is plain.

¶ 30    We acknowledge the People's argument that under *People v. Hoggard,* 2017 COA 88, *aff'd on other grounds*, 2020 CO 54, no reversal is required where the faulty instruction did not prejudice the defendant. In this regard, the People assert that Tun was not prejudiced because his attorney presented a defense to a subsection (2) charge. However, we find *Hoggard* distinguishable because the *Hoggard* division concluded that the variance at issue was not a constructive amendment. It therefore analyzed the issue as a

14

simple instructional error, concluding that the manner in which the element was altered did not affect the defense strategy or the proof offered by the defendant. *Id.* at ¶ 34. Here, we conclude that the error was a constructive amendment, triggering a different analysis concerned with the lack of notice to Tun. Due to the constructive amendment, Tun's attorney unexpectedly had to rebut the inference that Tun did not have insurance because he failed to present it, a turn of events that triggers fairness concerns.[4]

---

[4] In *Carter*, ¶¶ 31-32, 57, the division concluded that the defendant was not prejudiced by an identical constructive amendment and, further, that he was actually advantaged by it. The defendant's theory was that he was not the operator of the vehicle. *Id.* at ¶ 31. He apparently chose this defense because bodycam footage demonstrated that he failed to produce proof of insurance when asked. *Id.* at ¶ 32. The division reasoned that the defendant's counsel welcomed the constructive amendment because the defendant had a chance of acquittal under subsection (2), which imposes liability only on vehicle operators, *see* § 42-4-1409(2), while he had no chance of acquittal under subsection (3), which also imposes liability based on ownership, *see* § 42-4-1409(3). There was evidence that the defendant owned the vehicle. *Carter*, ¶ 31. We find *Carter* distinguishable. Here, there was no bodycam footage of the stop. Further, due to the constructive amendment, Tun's counsel had to argue in closing that the jury should not presume that the vehicle was not insured because the car belonged to Tun's son. Without this amendment, Tun needn't have made this argument. He could have instead relied on the absence of video evidence, arguing only that the People hadn't met their burden of proof.

¶ 31    We reverse Tun's conviction for failure to present proof of insurance. Because the evidence at trial would have been sufficient to sustain a conviction for failure to present proof of insurance upon request under subsection (3), Tun may constitutionally be retried. *Riley*, ¶ 20. We remand this case for a new trial on this charge.

V.    Sufficiency of the Evidence of DUR and DARP

¶ 32    Tun next contends that the evidence was insufficient to support his DUR and DARP convictions because the People failed to prove the "knowledge" element of each offense beyond a reasonable doubt. We disagree.

¶ 33    To prove DUR, the People were required to show that Tun drove "with knowledge" that his license or driving privileges were under restraint.[5] § 42-2-138(1)(d)(I). The term "with knowledge" in this statute means either (1) actual knowledge or (2) knowledge "of circumstances sufficient to cause a reasonable person to be aware that such person's license or privilege to drive was under restraint."

_____

[5] A restraint is "any denial, revocation, or suspension of a person's license or privilege to drive a motor vehicle in this state or another state." § 42-2-138(4)(b), C.R.S. 2020.

16

§ 42-2-138(4)(a).  The second part of this definition has both an objective and a subjective component, incorporating a reasonable person standard and a requirement that the defendant is aware of the specific circumstances from which knowledge may be inferred. *People v. Ellison,* 14 P.3d 1034, 1036-37 (Colo. 2000).

¶ 34    To prove DARP, the People were required to show that Tun drove while his license was revoked based on a finding that he was a habitual traffic offender, and that he did so "knowingly." § 42-2-206.  The term "knowingly" in this statute means that the defendant was "aware . . . that such a circumstance exist[ed]." § 18-1-501(6), C.R.S. 2020.  The relevant circumstance in this case is the revocation of Tun's license due to his habitual traffic offender status.  *Griego v. People,* 19 P.3d 1, 6 (Colo. 2001).

¶ 35    The People presented several pieces of evidence related to Tun's knowledge of the status of his license.  First, they presented his driving record.  It indicates that his license was revoked seven times between 1999 and 2013 (with a notation each time that notice was sent) and that it was never reinstated.  Second, the People presented a letter dated May 6, 2013, from the Division of Motor Vehicles to Tun notifying him that his license was revoked

based on a finding that he is a habitual traffic offender. The letter also notified Tun that his revocation would remain in effect until May 5, 2018. Attached to the letter was a record from the Department of Revenue entitled "Verification of Mailing of Notices/Orders." The record lists Tun's name and address, the date May 6, 2013, a handwritten checkmark next to Tun's name, the name of the mailroom employee responsible for mailing, and a statement that "by checking off the name and initialing this statement, the mail room verifies that these notices/orders were deposited in the U.S. mail first class."

¶ 36 Viewing this evidence in the light most favorable to the People, as we must when reviewing the sufficiency of the evidence, we conclude that it is sufficient to support a conclusion by a reasonable person that Tun had knowledge as defined in the DUR and DARP statutes. *People v. Carrasco*, 85 P.3d 580, 582 (Colo. App. 2003).

¶ 37 Tun's driving record is relevant to whether he knew his license was under restraint or revoked due to his status as a habitual traffic offender. The record contains evidence that his license was revoked multiple times over a period spanning nearly fifteen years,

notice was sent each time, and his license was never reinstated. This evidence increased the strength of the inference that at some point, Tun received and viewed a notice of revocation, and further, that he was not under the impression that his license had been reinstated. CRE 401 (evidence is relevant when it tends to make a material fact more or less probable).

¶ 38    The sheer volume of Tun's prior criminal driving convictions makes it highly unlikely that he had no knowledge that his license was revoked, he had been deemed a habitual traffic offender, and his license was under restraint. *Compare People v. Boulden*, 2016 COA 109, ¶¶ 15-17 (finding that a driving record that showed one suspension seven months prior to the date of the offense, along with verification that a notice of suspension was sent to the defendant's last known address, was not sufficient to prove knowledge with respect to DAR), *with People v. Espinoza*, 195 P.3d 1122 (Colo. App. 2008) (relying in part on the defendant's driving record and his status as a habitual traffic offender to prove knowledge under the DARP statute). It also reduces the likelihood that Tun simply unwittingly discarded the notices. *Ellison*, 14 P.3d at 1037 n.5 (noting that while a defendant may not have knowledge

of a restraint if he accidentally throws a notice away, this hypothetical assumes that numerous traffic offenses alone would not lead a reasonable person to conclude that his license was under some type of restraint).

¶ 39    In addition, under sections 42-2-119(2) and 42-2-138(2)(a), C.R.S. 2020, an official record like the May 6, 2013, letter showing that a notice of a restraint was sent via first class mail to a defendant at his last known address gives rise to a permissible inference that the defendant received notice of the revocation. And evidence of such notice may, depending on the circumstances, support a finding that a defendant had knowledge as defined by the DUR statute. COLJI-Crim. 42:04.SP cmt. 2; *People v. Villa-Villa,* 983 P.2d 181, 182 (Colo. App. 1999) (citing section 42-2-119(2) as a way of providing proof of notice in a criminal case). The jury was given an instruction on the permissible inference raised by the evidence in this case with respect to the DUR charge.

¶ 40    We therefore conclude that, in combination, the evidence was sufficient to support Tun's convictions for DUR and DARP.

## VI.    Merger

¶ 41    Tun's final contention is that the trial court erred by failing to merge his DUR and DARP convictions because DUR is a lesser included offense of DARP, and his conviction on both counts therefore violates his double jeopardy rights.

¶ 42    We review de novo whether a conviction violates a defendant's right to be free from double jeopardy. *People v. Welborne*, 2018 COA 127, ¶ 7.  However, because Tun's trial counsel did not preserve this issue, we will reverse only if plain error occurred.  *Id.*; *see Hagos v. People*, 2012 CO 63, ¶ 14.

¶ 43    Pursuant to constitutional double jeopardy protections, a defendant may not receive multiple punishments for the same offense unless such punishments are legislatively authorized. *Hagos*, ¶ 8.  In Colorado, the General Assembly has determined that a defendant may not be convicted of two different offenses if one offense is a lesser included offense of the other.  *See* § 18-1-408(1)(a), C.R.S. 2020.  One offense is a lesser included offense of the other if "the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the

21

elements of the greater offense." *Reyna-Abarca v. People*, 2017 CO 15, ¶ 3. As a corollary to that rule, "an offense the commission of which is necessarily established by establishing the elements of a greater offense" is also a lesser included offense of that greater offense. *People v. Rock*, 2017 CO 84, ¶ 16.

¶ 44    In *People v. Wambolt*, a division of this court applied the tests articulated in *Reyna-Abarca* and *Rock* to the question of whether DUR is a lesser included offense of DARP, the very issue raised by Tun here. 2018 COA 88, ¶ 49. The division concluded that DUR is a lesser included offense of DARP because one set of elements included in DUR is also contained in DARP, and this fact is enough, under the test defined in *Rock*, to draw that conclusion. *Id.* at ¶ 64. We agree with the reasoning in *Wambolt* and similarly conclude that DUR is a lesser included offense of DARP.

¶ 45    Nonetheless, the question remains whether the trial court's failure to draw this conclusion and merge the offenses was plain error. We conclude that the error was not plain.

¶ 46    At the time that the trial court sentenced Tun, a division of this court had drawn the opposite conclusion, holding that DUR is not a lesser included offense of DARP. *People v. Zubiate*, 2013 COA

22

69, ¶ 52 (*Zubiate I*), *aff'd*, 2017 CO 17 (*Zubiate II*). In so holding, the *Zubiate I* division declined to follow *People v. Rodriguez*, 849 P.2d 799, 802 (Colo. App. 1992), a case in which another division of this court concluded that DUR is a lesser included offense of DARP. *Zubiate I*, ¶ 48. Thus, there was a split on this issue when the trial court allowed Tun to be convicted and sentenced for both DUR and DARP.

¶ 47 After Tun was sentenced, the supreme court affirmed the holding in *Zubiate I*, concluding that DUR is not a lesser included offense of DARP. *Zubiate II*, ¶ 21. However, the reasoning of *Zubiate II* was later disapproved in *Rock*, ¶ 16 n.4. *Rock*'s disapproval of the reasoning in *Zubiate II* called *Zubiate II*'s holding regarding DUR and DARP into question, paving the way for the analysis and contrary conclusion reached by the *Wambolt* division.

¶ 48 To find plain error, we must determine that an error was obvious, meaning that it contravened a clear statutory command, a well-settled legal principle, or controlling case law. *Scott v. People*, 2017 CO 16, ¶ 16. Here, at the time that the trial court ruled, the law was unsettled, and the trial court's decision complied with the most recent precedent from this court. Therefore, the error would

not have been obvious. *Id.* at ¶ 18 (concluding that the defendant had not established plain error where the trial court's ruling complied with existing precedent when it was made); *see also Wambolt*, ¶ 72 (relying on *Scott*, and declining to find plain error on this issue because the law was unsettled when the trial court ruled). For that reason, we conclude that no plain error occurred and we decline to merge Tun's convictions for DUR and DARP.

## VII. Conclusion

¶ 49 We reverse Tun's convictions for felony DUI, felony DUI per se, and failing to display proof of insurance, affirm his remaining convictions, and remand this case for further proceedings consistent with this opinion.

JUDGE FREYRE and JUDGE GROVE concur.