19CA0547 Peo v Marquez 01-20-2022 COLORADO COURT OF APPEALS Court of Appeals No. 19CA0547 Jefferson County District Court No. 16CR3203 Honorable Philip J. McNulty, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Benjamin R. Marquez, Defendant-Appellant. JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS Division II Opinion by JUDGE BERGER Yun and Vogt*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 20, 2022 Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021. 
 1 ¶ 1 A jury convicted defendant, Benjamin R. Marquez, of misdemeanor driving under the influence (DUI) and careless driving.
1 Marquez appeals those convictions, as well as his conviction for felony DUI. While we agree that the felony DUI conviction must be reversed, we do not reach Marquez’s equal protection challenge to the felony DUI provision and reject his remaining arguments. We therefore affirm the misdemeanor DUI and careless driving convictions, reverse the felony DUI conviction, and remand for further proceedings. I. Relevant Facts and Procedural History ¶ 2 Deputy Dylan Mahonee observed Marquez driving erratically and attempted to make a traffic stop. Although Marquez eventually stopped, he did not immediately pull over, nearly hitting a fire hydrant and sign in the process. During the traffic stop, Deputy Mahonee observed an empty beer can on the passenger floorboard. ¶ 3 Before Deputy Mahonee could read him the Express Consent advisement, Marquez demanded a breath test. After the deputy 1 The trial court dismissed a charge for illegal possession or consumption of alcohol in a motor vehicle, and Marquez pleaded guilty to driving after revocation. Because Marquez does not challenge that conviction on appeal, we do not disturb it. 
 2 finished reading the advisement, Marquez then demanded a blood test. To perform the blood test, Deputy Mahonee took Marquez to jail, where Marquez refused a blood test and demanded a breath test. Because of these multiple conflicting requests, he did not give Marquez either test. ¶ 4 Marquez’s son testified at trial. He claimed that the empty beer can was his and that he’d been drinking in the vehicle earlier that night. ¶ 5 A jury convicted Marquez of misdemeanor DUI and careless driving. The court held a separate hearing and found that Marquez had three prior intoxicated driving-related convictions. The court therefore convicted him of felony DUI and sentenced him accordingly. II. Analysis A. Felony DUI ¶ 6 The parties do not dispute, and we agree, that because the trial court (instead of the jury) found that Marquez had three prior convictions, the felony DUI conviction cannot stand. Linnebur v. People, 2020 CO 79M, ¶ 2. 
 3 ¶ 7 The parties dispute, however, whether the proper remedy is to reverse or vacate the felony DUI conviction. We reverse. The error did not affect Marquez’s misdemeanor DUI or careless driving convictions, so the trial court must resentence him on remand. “If, in lieu of resentencing, the prosecution seeks retrial of the felony DUI charge and [Marquez] raises a double jeopardy defense, the trial court must rule on that defense.”
2 Id. at ¶ 32. 2 The supreme court’s recent opinion in People v. Viburg, 2021 CO 81M, ¶ 2 (Viburg II), does not alter our disposition or remand order. Viburg II was an original proceeding under C.A.R. 21 following this court’s reversal of Viburg’s felony DWAI conviction, People v. Viburg, 2020 COA 8M, ¶ 1 (Viburg I). This court declined to address Viburg’s double jeopardy claim because we did not know if the prosecutor would, on remand, seek to retry Viburg on the felony charge and because, fundamentally, a double jeopardy bar is a defense to a criminal prosecution. After the supreme court denied certiorari in Viburg I, the prosecutor sought to retry Viburg on the felony charge, and the trial court ruled that a retrial was proper. Viburg II, ¶¶ 6-7. Viburg then filed an original proceeding in the supreme court to challenge the trial court’s ruling, and the supreme court issued a rule to show cause. Id. at ¶ 8. In its opinion on the merits of the double jeopardy ruling, the supreme court held that principles of double jeopardy (as well as principles of due process and Colorado’s mandatory joinder statute) did not bar a jury trial of the felony DWAI charge. Id. at ¶¶ 23, 27, 28. Obviously, after this case is returned to the district court, if the prosecutor seeks to retry Marquez for felony DUI, the supreme court’s decision in Viburg II will be dispositive on the double jeopardy question. But that does not mean that we should on direct appeal address a double jeopardy challenge that may be moot if the prosecutor chooses not to retry Marquez for felony DUI. 
 4 ¶ 8 Because we reverse the felony DUI conviction, we do not decide Marquez’s unpreserved argument that the felony DUI provision violates equal protection. But see, e.g., People v. Tun, 2021 COA 34, ¶ 18 (rejecting a similar equal protection challenge to the felony DUI provision). B. Marquez’s Remaining Claims of Error ¶ 9 Because Marquez’s remaining claims of error may affect his misdemeanor DUI and careless driving convictions, we address those arguments. 1. Judicial Questioning ¶ 10 Marquez argues that the trial court reversibly erred when it allegedly stepped into a prosecutorial role by asking a witness one question. ¶ 11 In response to counsels’ questioning, Marquez’s son testified that the empty beer can was his. The jury then also asked if the empty beer can was his and the court posed the question to him. ¶ 12 After he again said yes, the court said, “Can you describe it for the jury.” The son identified three beer brands, none of which matched the empty can. Defense counsel then asked whether the beer can could have been a fourth brand (it was), to which the son 
 5 said yes. In closing argument, the prosecutor emphasized the son’s initial answer regarding the can’s brand. ¶ 13 It is unclear whether the parties agree on the applicable standard of review. We do not need to decide that question because there was no error. But see People v. Hall, 2021 CO 71M, ¶¶ 16-17 (applying abuse of discretion review to claims of judicial misconduct in a bench trial). Marquez did not preserve this issue, so we reverse only for plain error. Hagos v. People, 2012 CO 63, ¶ 14. ¶ 14 Trial courts may ask witnesses questions. CRE 614(b). But courts may not act as an advocate: the test is “whether the trial judge’s conduct so departed from the required impartiality as to deny the defendant a fair trial.” People v. Adler, 629 P.2d 569, 573 (Colo. 1981). “A trial court has the prerogative and, sometimes, the duty to question witnesses called by a party. Such questions are not improper where the purpose is to develop more fully the truth and to clarify testimony already given.” People v. Ray, 640 P.2d 262, 264 (Colo. App. 1981) (citations omitted). ¶ 15 The court’s question did not so depart from the required impartiality as to deny Marquez a fair trial. The court asked only one question that more fully developed a topic already addressed by 
 6 both counsel and the jury. Id. The question was also open-ended and neutrally phrased. Although the answer may have been damaging to Marquez, that does not affect the propriety of the court’s question. ¶ 16 To the extent Marquez separately challenges the prosecutor’s references in closing to the answer, we reject that argument. Prosecutors may comment on the evidence, and again, although the answer may have been damaging, that does not mean that the court’s question was improper. 2. Prosecutorial Misconduct ¶ 17 Marquez also contends that the prosecutor engaged in prosecutorial misconduct. a. Standard of Review, Preservation, and Applicable Law ¶ 18 When reviewing prosecutorial misconduct claims, we first “determine whether the prosecutor’s questionable conduct was improper based on the totality of the circumstances,” before determining “whether such actions warrant reversal according to the proper standard of review.” Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). 
 7 ¶ 19 Marquez did not preserve any claims of prosecutorial misconduct. Therefore, we review only for plain error, and reverse only if the conduct was flagrantly, glaringly, or tremendously improper. Domingo-Gomez v. People, 125 P.3d 1043, 1053 (Colo. 2005). ¶ 20 Prosecutors commit misconduct when they misstate the evidence, lower the burden of proof, or make assertions based on personal knowledge. See People v. Nardine, 2016 COA 85, ¶ 35; People v. Van Meter, 2018 COA 13, ¶ 31; Domingo-Gomez, 125 P.3d at 1049. To determine the propriety of a statement, we consider the language used, the statement’s context, and the evidence supporting the conviction. Domingo-Gomez, 125 P.3d at 1050. b. Misstating the Evidence ¶ 21 Marquez first claims that the prosecutor misstated the evidence when she stated (during opening argument and while questioning Deputy Mahonee) that Marquez actually hit a fire hydrant and sign even though the undisputed evidence was that he nearly hit them. 
 8 ¶ 22 The Attorney General has not cited any evidence that would support the prosecutor’s statements. We therefore agree that the prosecutor misstated the evidence. c. Analogies ¶ 23 Marquez’s next claim of prosecutorial misconduct involves two analogies that the prosecutor used during voir dire to describe circumstantial evidence. Marquez also argues that the prosecutor aggravated the impact of the allegedly improper analogies when she referenced Occam’s Razor during closing argument and said, “The simplest explanation is usually the right one.” ¶ 24 During voir dire, the prosecutor said: So there are two types of evidence. There’s direct and circumstantial. Circumstantial -- the way I generally describe that is if I tell you I have something behind my back. It’s red. It’s round. It’s a fruit. It has seeds. It grows on trees. One a day keeps the doctor away. It’s the main ingredient in America’s favorite pie, and we give these to our teachers. Do you know what I have behind my back, not having seen it? ¶ 25 As some prospective jurors pushed back on whether the item was definitively an apple, the prosecutor said she was using the analogy to ask about “a bar to being able to listen.” She went on: 
 9 [During trial,] I’m going to ask you to look at the law. I’m going to ask you to listen to the testimony and then draw some conclusions about what happened. An example, I guess, in regular life would be if you were babysitting, and there were red soda . . . and you told the person you’re babysitting, “Don’t drink that,” and they said, “Okay.” And then you went upstairs and came back down, and they had a red ring on their lips, and the red pop was gone. Could you draw a conclusion from that about what happened? [Prospective Juror]: Yes. [Prosecutor]: Okay. So that’s similar to what I’m going to be asking you to do today. I’m going to be asking you to make observations, look at the circumstances surrounding the string of observations, and draw some conclusions. ¶ 26 These analogies were not improper. The prosecutor described the difference between direct and circumstantial evidence. Marquez, however, argues that when the prosecutor pushed back on some of the prospective jurors’ responses to the analogies, she lowered the burden of proof. ¶ 27 We disagree. Rather, the prosecutor discussed the concept of drawing reasonable inferences from circumstantial evidence, which was not close to constituting an improper analogy. Cf., e.g., Van 
 10 Meter, ¶ 31 (finding prosecutorial misconduct by repeatedly analogizing to a puzzle). ¶ 28 Nor was the reference to Occam’s Razor improper when read in context. The prosecutor immediately followed up by telling the jurors to ask themselves what evidence was and was not before them before saying that “reasonable doubt is not vague or speculative. And that’s exactly what we were given by the defendant’s witnesses.” In context, the prosecutor argued only that the jury should make reasonable inferences based on the evidence. That was entirely proper. d. Personal Knowledge ¶ 29 Marquez’s last claim of prosecutorial misconduct is that the prosecutor cited evidence outside the record when she said that she had previously been pulled over and that she had not thought it was a good idea to get out of the car when an officer was next to it. ¶ 30 We agree that these statements were improper. They were based on the prosecutor’s personal experience and were not supported by any evidence admitted at trial. 
 11 e. Reversal ¶ 31 Although we agree that the prosecutor made improper statements, we conclude that the statements do not individually or cumulatively warrant reversal.
3 ¶ 32 The prosecutor’s misstatements regarding hitting the fire hydrant and sign were corrected when Deputy Mahonee testified that Marquez did not actually hit a fire hydrant or sign. Deputy Mahonee’s testimony therefore corrected the misstatements, and in any event, the statements did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. Domingo-Gomez, 125 P.3d at 1053. ¶ 33 The prosecutor’s statements regarding her personal experience were, at best, fleeting. Moreover, while the statements referenced facts not in evidence, prosecutors are entitled to argue that jurors should use their own common sense and life experiences when 3 Marquez argues that the alleged prosecutorial misconduct individually and cumulatively warrants reversal, in addition to his claim of cumulative error under Howard-Walker v. People, 2019 CO 69. We assume, without deciding, that such a claim of cumulative prosecutorial misconduct is cognizable apart from Howard-Walker. 
 12 deliberating. The statements were therefore not flagrantly, glaringly, or tremendously improper. Id. ¶ 34 Even if we consider the cumulative impact of the statements, Marquez still received a fair trial. The misstatements therefore do not warrant reversal. 3. Jury Instructions ¶ 35 Marquez also argues that a jury instruction regarding refusal to submit to a chemical test unduly emphasized that evidence and should have been supplemented with additional language. ¶ 36 Based on Marquez’s ultimate refusal of the blood test that he demanded, the prosecution requested, and the court gave, the following instruction: You are instructed that any person who drives any motor vehicle in the State of Colorado may be required to submit to a chemical test for the purpose of determining the alcoholic content of his or her blood. If a person refuses to submit to such chemical test, then the jury may consider such refusal along with all other competent evidence in determining the defendant’s guilt or innocence. If you find that the defendant refused to take a chemical test of the defendant’s blood or breath, you may consider this refusal along with other evidence in determining whether the defendant is guilty of the offense of Driving 
 13 under the Influence or Driving While Ability Impaired. ¶ 37 Defense counsel proffered additional instructions, which, among other things, would have allowed the jury to infer innocence if the jury found that Marquez requested a breath test, but the officers refused to give him one. ¶ 38 We review de novo whether the jury instructions correctly informed the jury of the applicable law. People v. Roberts-Bicking, 2021 COA 12, ¶ 17. We review a court’s decision to give any particular instruction for abuse of discretion, which occurs if the decision was “manifestly arbitrary, unreasonable, or unfair.” Id. (quoting People v. Trujillo, 2018 COA 12, ¶ 11). ¶ 39 We need not decide whether Marquez preserved this issue because we perceive no error and reject Marquez’s arguments as foreclosed by the Colorado Supreme Court’s holding in Cox v. People, 735 P.2d 153, 159 (Colo. 1987). ¶ 40 First, Marquez argues that Cox’s language regarding this issue was dicta. We disagree. Evidence that someone refused to take (or complete or cooperate with completing) a chemical test is admissible in a DUI trial. § 42-4-1301(6)(d), C.R.S. 2021. The Cox 
 14 court stated that it had granted certiorari on the propriety of instructing the jury that evidence of refusal could be used to determine guilt. 735 P.2d at 154. The court held that the instruction was proper. Id. at 159. Irrespective of the brevity of the court’s analysis, it is a holding of the supreme court and we are bound by it. See People v. Allen, 111 P.3d 518, 520 (Colo. App. 2004) (“[W]e are bound by the decisions of the Colorado Supreme Court.”). ¶ 41 Second, to the extent that Marquez makes an argument outside of Cox’s holding, this instruction did not unduly emphasize evidence of his failure to take a test. The instruction that the supreme court expressly approved in Cox stated, “[i]f a person refuses to submit to such chemical test, then the jury may consider such refusal along with all other competent evidence in determining the Defendant’s guilt or innocence.” 735 P.2d at 155. ¶ 42 The instruction here told the jurors that if they found Marquez refused a test, “you may consider this refusal along with other evidence in determining” his guilt. (Emphasis added.) The court’s instruction, though lengthier, was an accurate articulation of the 
 15 law from Cox and informed the jury that it could consider the refusal if it found that Marquez refused the test.
4 ¶ 43 Third, we reject Marquez’s argument that the court should have given defense counsel’s additional instructions. As noted above, the instruction accurately stated the law from Cox. The court’s denial of Marquez’s additional instruction that the jury could infer innocence from his requests for a test was not an abuse of discretion under these circumstances. ¶ 44 The trial court’s instruction and its refusal to give any additional instruction were appropriate under Cox. 4. Cumulative Error ¶ 45 We have already concluded that the two instances of prosecutorial misconduct do not cumulatively warrant reversal. We have also rejected the other claims of error. Therefore, Marquez’s claim of cumulative error fails. Howard-Walker v. People, 2019 CO 69. 4 Marquez’s argument that the instruction is not in the Model Jury Criminal Instructions is inconsequential. The court’s instruction was consistent with Cox v. People, 735 P.2d 153, 159 (Colo. 1987), which, unlike the model instructions, is binding authority. 
 16 III. Disposition ¶ 46 The felony DUI conviction is reversed, and the case is remanded for further proceedings. The misdemeanor DUI and careless driving convictions are affirmed. On remand, if the prosecution elects not to retry Marquez for felony DUI, then the trial court must resentence him for the misdemeanor DUI conviction. If the prosecution elects to retry Marquez for felony DUI, and if Marquez interposes a double jeopardy bar, then the court must decide that question before retrial. JUDGE YUN and JUDGE VOGT concur.