The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Edward S. ADLER, Defendant-Appellant.

No. 79SA339.

Supreme Court of Colorado,
En Banc.

May 4, 1981.
Rehearing Denied June 29, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Sarah Scott Sammons, Asst. Atty. Gen., Denver, for plaintiff-Appellee.

G. Philip Bryson, Longmont, for defendant-appellant.

LOHR, Justice.

The defendant, Edward S. Adler, was convicted of felony theft by receiving, section 18–4–410, C.R.S.1973 (1978 Repl. Vol. 8),[1] in connection with his purchase of a stereo receiver from an undercover policeman. He appealed from that conviction, raising issues concerning a variance between the date of the offense stated in the direct criminal information and the date proved at trial; the judge's conduct during the trial; the sufficiency of the entrapment defense; and the necessary elements of theft by receiving. We affirm the defendant's conviction.

On August 10, 1978, Criss Clinton, a detective in the Greeley police department was working undercover with the Weld County sheriff's office. At the request of sheriff's office investigators, Clinton traveled to Mead, Colorado, on that date to attempt to sell a stereo receiver to the defendant, the proprietor of a small gasoline service station, upon the representation that the receiver had been stolen. In fact, the receiver belonged to the Weld County sheriff's office. The sale was accomplished. The defendant was later arrested and charged by information with felony theft by receiving.

At trial detective Clinton testified that he had hidden an electronic transmitter under his clothing before arriving at the defendant's place of business. Clinton entered the station and began a conversation with a man and a woman who were there at the time. He eventually asked both of these persons whether they knew anyone who would be interested in buying a stereo receiver. They initially answered no, but the woman then stated that one of the boys in the garage might buy the stereo. Approximately fifteen minutes after Clinton had entered the station, the defendant came in from the nearby detached garage and the woman identified him as the owner of the establishment. Detective Clinton then asked the defendant whether he wished to pick up a stereo receiver. The defendant asked how hot the stereo was and Clinton said "it's hot." After this exchange, the defendant returned to the garage building without further comment. Several minutes later Clinton went to the garage where the defendant was working on a tire and again

---

1. Section 18–4–410 provides in pertinent part:

    "(1) Except as provided in subsection (6) of this section, a person commits theft by receiving when he receives, retains, loans money by pawn or pledge on, or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when he intends to deprive the lawful owner permanently of the use or benefit of the thing of value.

    .    .    .    .    .

    (4) Where the value of the thing involved is two hundred dollars or more but less than ten thousand dollars, theft by receiving is a class 4 felony."

asked him whether he wanted to purchase the stereo or knew anyone who did. The defendant stated that he didn't know much about stereos but that he would have a friend who was present, look at it. The defendant, his friend, and Clinton then went out to the detective's car to examine the stereo. Because of its size and the fact that it was still in the box, the parties decided that the stereo should be taken out of the car and examined in the service station office, and this was done.

Detective Clinton testified that while examining the stereo the defendant appeared to be worried about the serial numbers and asked Clinton whether the stereo was "safe." The detective told the defendant that a friend had obtained the stereo from a warehouse in Denver without the knowledge of the warehouse owners and that because the stereo had been taken before it could be sent to a retail dealer the serial numbers were not listed. After completion of the examination, the defendant asked Clinton how much he wanted for the stereo. When Clinton replied "$75," the defendant said he would give him $50 and "take a chance." The defendant then handed Clinton a fifty dollar bill from his wallet. After the purchase had been made, the detective accompanied the defendant outside and asked whether he would be interested in purchasing other items of electronic equipment. The defendant replied that he would be interested in a color television set. Although the defendant gave Clinton a phone number, he stated that if the detective wanted to contact him further Clinton should do it in person.[2]

The defendant testified in his own defense. He stated that for years he had been in the business of buying used appliances and other used property at auctions and flea markets, and reselling these items for a profit. The defendant's version of the transaction in question was that while he had indeed purchased the stereo from Clinton, there had been no mention that it was stolen property until the defendant was handing the money to Clinton. The defend-

ant testified that he then saw no alternative to completing the transaction, as Clinton had his fifty dollars. Parts of this version were corroborated by other defense witnesses who were present at the service station when the events took place. The defendant denied that the conversation with respect to the television set had occurred.

In rebuttal the People offered a tape recording of the transaction. The recording had been made by Weld County's sheriff's department officers based on signals from the transmitter hidden on Clinton. Although the quality of the recording was poor, it tended to support Clinton's testimony as to the time when mention was first made that the stereo had been stolen and as to the conversation about the television set. The case was then submitted to the jury which found the defendant guilty of felony theft by receiving.

## I.

The defendant first contends that the offense charged was not proved because the direct criminal information specifies that the offense occurred on August 18, 1978, whereas proof at trial revealed that August 10, 1978, was the relevant date. In the alternative, and for the same reason, he claims that he was not adequately notified of the offense charged. Those arguments are without merit.

In cases where the defendant made no showing that he was impaired in his defense to the charge at trial or in his ability to plead the judgment as a bar to a subsequent proceeding, we have held that a variance between the specific date of the offense as alleged in the information and the date as proved at trial is not fatal. *E. g., Marn v. People*, 175 Colo. 242, 486 P.2d 424 (1971) (three-day variance); *Albritton v. People*, 157 Colo. 518, 403 P.2d 772 (1965) (five-day variance); *Laycock v. People*, 66 Colo. 441, 182 P. 880 (1919) (series of acts, the earliest of which was approximately eighteen months prior to the date charged); *see* Crim.P. 7(b).

---

2. The foregoing account is based upon evidence presented during the People's case.

Aside from the fact that the variance in dates was not raised until the defendant's motion for new trial, *see Marn v. People, supra,* the defendant has not shown that the mistake in any way impaired his ability to defend against the charge [3] or to plead the judgment in bar of further prosecutions for the same offense. *See People v. Donachy,* 196 Colo. 289, 586 P.2d 14 (1978). The error in the information therefore supplies no ground for reversal.

## II.

The defendant next contends that the trial court committed prejudicial error in allowing the prosecution to endorse a witness during the trial. That witness was called to prove that the value of the stereo exceeded $200, thereby establishing the offense as a felony instead of a misdemeanor. *See* section 18–4–410(3), (4), C.R.S.1973.

Whether the prosecution should be granted leave for the late endorsement of witnesses is a matter within the discretion of the trial court. *People v. Bailey,* 191 Colo. 366, 552 P.2d 1014 (1976); *Gorum v. People,* 137 Colo. 1, 320 P.2d 340 (1958). Even where prejudice is shown, granting leave for late endorsement is not reversible error unless the defendant makes a timely request for a continuance which is denied by the trial court. *People v. Bailey, supra.* Although the trial judge indicated to the defendant that he would grant a continuance after the testimony of the witness had been received if the defendant requested such relief, the defendant did not make such a request. The more troublesome question, however, concerns the defendant's objection to the conduct of the trial judge prior to allowing the prosecution's new witness to be endorsed.

In order to prove that the value of the stereo sold to the defendant exceeded $200, the prosecution had called a deputy from the Weld County sheriff's office who testified that he had purchased the stereo from another law enforcement agency for $234. Before the prosecution rested its case, the trial judge called a noon recess and asked to see the attorneys for both parties. No record was made of the ensuing discussion. Prior to the resumption of the trial, the judge and counsel again met in chambers, this time on the record. The prosecution moved to endorse an additional witness who would testify on the issue of value. Comments from both counsel and the trial judge reflect that during the discussion off the record the trial judge had indicated that the prosecution might not have produced sufficient evidence of value to establish a prima facie case.[4] The judge apparently suggested that another witness be called to establish value. The prosecution heeded this suggestion and obtained a witness on the issue during the noon recess. Although the trial judge expressed concern about the prosecution's lack of preparation, he ruled that the witness would be allowed to testify. The court also ruled that the defense would be granted a continuance, if desired, in order to obtain evidence to rebut this testimony. The defendant objected to the late endorsement on grounds that the trial judge had bolstered an otherwise inadequate case for the prosecution and that this conduct had prejudiced the defendant. It is this contention which the defendant renews here.

The general responsibility of a trial judge is explained in Standard 6–1.1, Special Functions of the Trial Judge, I *A.B.A. Standards for Criminal Justice,* (2d Ed. 1980), as follows:

"(a) The trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice. The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his or her initiative, at all appropriate times and in an appropriate manner, matters which may

---

3. The defendant admitted that the transaction occurred. His defense was based upon his lack of knowledge that the stereo was stolen, and on entrapment.

4. The concern was based on the fact that the evidence of the $234 purchase price related to a transaction between two law enforcement agencies.

significantly promote a just determination of the trial. The only purpose of a criminal trial is to determine whether the prosecution has established the guilt of the accused as required by law, and the trial judge should not allow the proceedings to be used for any other purpose."

The commentary to that standard elaborates:

"The adversary process, with all its shortcomings, is to be preferred as a procedure by which substantial justice can be attained in litigated cases. But the adversary process should not be regarded as sacred, and it is the proper role and function of a trial judge to exercise his or her judicial powers in such manner as to give a jury the opportunity to decide a case free from irrelevant issues and appeals to passion and prejudice. In addition, it is appropriate for the trial judge from time to time to intervene in the conduct of a case. Thus, when it clearly appears to the judge that for one reason or another the case is not being presented intelligibly to the jury, the judge is not required to remain silent. On the contrary, the judge may, by questions to a witness, elicit relevant and important facts. The judge may interrogate a witness after cross-examination that appears to be misleading to the jury. The judge may also give interim explanations to the jury of the procedure of the trial, advise as to the applicability of the evidence to the issues, and state applicable principles of law. Moreover, the judge, on his or her motion, may sever a defendant from the trial or may sever offenses in an indictment when it appears to the judge that the severance will promote justice in the case and the severance could have been obtained on motion of the prosecution or defense. These are a few examples that illustrate the balance a judge may strike to promote justice in a case and avoid a partisan role. The judge should be aware that there may be a greater risk of prejudice from overintervention than from underintervention. While the judge should not hesitate to exercise authority when necessary, the judge should avoid trying the case for the lawyers."

■■■ When a trial judge elects to raise matters to promote a just determination of a trial, he must take great care to insure that he does not become an advocate. *See People v. Martinez*, 185 Colo. 187, 523 P.2d 120 (1974) (Reversible error is committed where, in the absence of the prosecutor at a hearing on a motion to suppress evidence, the trial judge calls witnesses, presents evidence, cross-examines the defense witnesses, objects to defense counsel's questions, and rules on defense counsel's objections to the court's questions of witnesses). The test which must be applied here is whether the trial judge's conduct so departed from the required impartiality as to deny the defendant a fair trial. *See People v. Corbett*, Colo., 611 P.2d 965 (1980). Although the trial court's action in pointing out a possible deficiency in the prosecution's case may have been ill-advised,[5] we hold that such conduct did not result in a breach of that standard.

Significantly, the trial judge's suggestions to the prosecution were made out of the presence of the jury. The jury was not told that the additional witness for the prosecution appeared at the judge's suggestion. The trial record reflects the judge's otherwise careful and impartial attention to the rights of both parties throughout the trial. Also, when the prosecution's new witness was permitted to testify, the judge told the defendant that he would be granted a continuance, if desired, so that he could seek to obtain evidence to refute the new evidence of the stereo's value. These fac-

---

5. Not only the actuality of fairness must concern us, but the appearance of fairness as well. "Courts must meticulously avoid any appearance of partiality not merely to secure the confidence of the litigants immediately involved, but 'to retain public respect and secure willing and ready obedience to their judgments.' (citation omitted)." *People v. District Court*, 192 Colo. 503, 508, 560 P.2d 828, 831–32 (1977). *See* Canon 2A, Colorado Code of Judicial Conduct; Standards 6–1.1, 6–1.5, Special Functions of the trial Judge, I *A.B.A. Standards For Criminal Justice* (2d Ed. 1980).

tors tend to establish that the defendant was not deprived of his substantial rights by the trial judge's conduct. Although we do not wish to be understood as approving of the judge's decision to call the prosecutor's attention to the possible evidentiary weakness in his case, on the record as a whole we conclude that the defendant was not denied a fair trial. *See People v. Corbett, supra; see also Bland v. State*, 251 Ark. 23, 470 S.W.2d 592 (1971) (in a trial to the court for grand larceny, after the prosecution rested the trial judge brought to the district attorney's attention the fact that the value of the stolen goods had not been proved, and then permitted the prosecution to reopen its case to present such proof); *People v. Walter*, 90 Ill.App.3d 687, 46 Ill. Dec. 102, 413 N.E.2d 542 (1981) (trial court suggested to the prosecutor, out of the presence of the jury, the need to establish venue and the identity of the defendant); *State v. Johnson*, 454 S.W.2d 27 (Mo.1970) (in a trial for stealing, the trial judge suggested to the prosecutor, out of the hearing of the jury, that he elicit testimony as to the ownership of the items taken and the legal nature of the owner company); *State v. Roddy*, 604 S.W.2d 32 (Mo.App.1980) (in a trial for operating a motor vehicle without the consent of the owner, the trial judge suggested to the prosecutor, out of the hearing of the jury, that he ask the witness police officer if he saw who was driving the car).

### III.

The defendant contends that the evidence produced at trial establishes as a matter of law that he was entrapped into committing the offense of theft by receiving. We disagree with this contention. Section 18–1–709, C.R.S.1973 (1978 Repl. Vol. 8) defines the defense of entrapment as follows:

"The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was in-

duced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used."

In cases decided without the benefit of that statute we have adopted the "subjective" theory of entrapment, concentrating on the defendant's predisposition to commit the crime. *People v. Vandiver*, 191 Colo. 263, 552 P.2d 6 (1976); *People v. Simmons*, 179 Colo. 431, 501 P.2d 119 (1972). Under this approach, entrapment does not take place when the defendant is already predisposed to commit a criminal offense and the government agent simply affords him an opportunity to act upon that inclination. *People v. Lee*, 180 Colo. 376, 506 P.2d 136 (1973); *People v. Simmons, supra.*

In contrast, the "objective" theory stresses the acts of the government officers. Irrespective of the actual propensities of the defendant, the police will be deemed to have entrapped him if their conduct was such as to persuade the "average" or "innocent" citizen to commit the offense. *See generally R. Park, The Entrapment Controversy*, 60 *Minn.L.Rev.* 163 (1976).

We have not yet had the occasion to determine which of these theories has been embodied in section 18–1–709, C.R.S.1973 (1978 Repl. Vol. 8).[6] However, this question need not be resolved in this case for the evidence does not support a finding of entrapment as a matter of law under either theory.

Even under the defendant's version of the transaction, detective Clinton did no more than present the defendant with an

---

6. The court of appeals has held that the statute codifies the subjective approach. *People v.*

*Sanchez*, 40 Colo.App. 552, 580 P.2d 1270 (1978).

opportunity to commit the crime. There was no evidence of badgering, intimidation, appeals to special sympathy or any other means of undue persuasion. The defendant expressly testified that he was not "talked into" purchasing the stereo. This evidence does not establish as a matter of law that the defendant was entrapped, under either the subjective or the objective test. *See People v. Bucher*, 182 Colo. 211, 511 P.2d 895 (1973).

The defendant argues, however, that detective Clinton created in the defendant the belief that the stereo was stolen by deceiving him as to that fact and thereby entrapped him. We disagree with this argument. By falsely asserting that the goods were stolen, Clinton did no more than create a basis for the defendant to believe that the stereo was stolen; this merely afforded the defendant an opportunity to purchase the stereo with that belief. Such conduct does not constitute entrapment. *See People v. Jackson*, Colo., 627 P.2d 741 (1981).

The jury was instructed on entrapment in the language of the statute. The defendant did not object to this instruction or tender any instruction of his own. The jury resolved the issue against the defendant. Under these circumstances, we will not disturb the jury's verdict.

### IV.

The defendant next contends that the crime of theft by receiving cannot be committed unless the goods received were actually stolen. We have expressly resolved this question adversely to the defendant's position in our opinion in *People v. Holloway*, 193 Colo. 450, 568 P.2d 29 (1977). In that case we also disposed of the defendant's contention that he could not have formed the requisite criminal intent to deprive the lawful owner of the goods unless those goods were actually stolen. Finally, in *Holloway*, in the course of our consideration of the contentions that section 18–4–410, C.R.S.1973 (1978 Repl. Vol. 8) is overbroad and vague, we implicitly resolved the defendant's contention that such statute

infringes on the defendant's right to freedom of commerce. There we stated, and we reaffirm here, that there is no "constitutional right to deal in property known or believed to be stolen." *People v. Holloway, supra* at 453, 568 P.2d at 31.

Finding the defendant's assertions of error to be without merit, we affirm his judgment of conviction.