19CA2302 Peo v Lopez 08-22-2024 COLORADO COURT OF APPEALS Court of Appeals No. 19CA2302 Arapahoe County District Court No. 17CR3189 Honorable Andrew C. Baum, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Michael Paul Lopez, Defendant-Appellant. JUDGMENT AFFIRMED Division VII Opinion by JUDGE TOW Gomez and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 22, 2024 Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Cynthia A. Harvey, Alternate Defense Counsel, Aurora, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Michael Paul Lopez, appeals the judgment of conviction entered on a jury verdict finding him guilty of vehicular eluding. We affirm. I. Background ¶ 2 While on patrol duty, two officers ran the plate of a black truck. The license plate was registered to a silver minivan, indicating that the plate may have been stolen. The officers pulled alongside the truck to identify the driver, then pulled back behind the truck and turned on the police car’s lights and siren. Instead of pulling over, Lopez turned into a residential neighborhood, turned off the truck lights, and sped away, running a stop sign. When Lopez reached a dead end, he jumped out of the truck and ran away. While searching the abandoned truck, the officers found a back panel to a cell phone. ¶ 3 An officer searched the truck’s VIN and called the person whose name appeared in the records, David Emick, who said that he had sold the truck. The following day, the officers discovered that the license plate on the truck was registered to Lopez’s mother 
2 and got the address associated with the registration. They went to the address, talked to Lopez’s mother and saw Lopez, whom they recognized as the driver of the truck. They arrested Lopez. The officers searched Lopez and found a phone that was missing its back panel. The phone back panel found in the truck was later “match[ed]” to Lopez’s phone and clicked onto it. ¶ 4 At trial, the officers identified Lopez. Lopez’s theory of defense was that there was an insufficient police investigation and inadequate evidence of identity. A jury convicted Lopez of vehicular eluding, the only charge tried to the jury.
1 ¶ 5 This appeal followed. II. Judicial Conduct ¶ 6 Lopez contends that the trial court assumed the role of the prosecutor and advocated for the admission of evidence the prosecutor was not going to introduce. We disagree. 1 Lopez was also charged with possession of a weapon by a previous offender (POWPO). The POWPO charge was bifurcated from the vehicular eluding charge and ultimately dismissed after Lopez was convicted of vehicular eluding. 
3 A. Additional Background ¶ 7 During cross-examination, defense counsel asked one of the officers about the use of his body camera. The officer indicated that he could not recall if there was body camera footage from the incident. He further explained that, according to his agency’s policies, there are situations where some other action would take precedence over the officer turning on the body camera, including when shots are fired at either the officer or someone else. The prosecutor asked to approach the bench. During the bench conference, the prosecutor argued that defense counsel had opened the door for him to ask about the gun that the officer saw when Lopez exited the truck and the possession of a weapon by a previous offender (POWPO) charge. Defense counsel stated that he did not know why the officer started talking about a gun because his testimony was that the priority was to clear the truck that he had stopped. Ultimately, the trial court said that it would question the officer in camera and then would have more information to make a decision. The parties agreed. 
4 ¶ 8 The trial court then questioned the officer outside the presence of the jury. The court ruled that it was a “moot point” whether or not the policy stated that the officer had to turn the body camera on once he saw the gun because the officer did turn the body camera on. The court also observed that, based on the officer’s testimony about the policy and the circumstances on the day in question, there were other safety concerns present — unrelated to the gun — that would also have justified the officer not turning on his body camera. As such, the court did not allow any further testimony about the gun. ¶ 9 The trial court also noted that the jury was left with an inference that the officer did not turn the body camera on and that there was a lack of investigation or no evidence. The court stated, So I’ll allow, to the extent you want, [prosecutor], on redirect to go into the fact that he actually did have his body-worn camera on and if you want to show that as an exhibit to whatever extent that’s helpful, I’ll allow that just to remedy the fact that the jury now has a different version of events. And so you can rebut the — maybe the inference that [the officer] wasn’t doing a full investigation. 
5 ¶ 10 Defense counsel asked how the prosecutor was going to introduce the body camera footage when the officer had already testified that he did not recall if he had any footage. The court replied, Well, I’m not going to tell [the prosecutor] how to run his case. . . . But I think he can figure out a way to get that body-worn cam, body-
worn camera in if he wants. He’s a pretty experienced attorney as are you, [defense counsel]. So I have no doubt there will be a way to get it in. . . . I’m more anticipating or preaddressing any issue that it wasn’t on the exhibit list or it wasn’t, you know, something like that. At this point, the door has been opened to them introducing it if they can get it in, even though it wasn’t on their good-faith list that I’m looking at. But to the extent, [prosecutor] you want to put that into the . . . . The prosecutor responded that he was not anticipating using the video because it was short, blurry, and he thought the officer yelled “gun” or Lopez had a gun at some point. It was suggested that the video could be played on mute. The court said, Yeah, that was my thought was if there’s nothing sound-wise, at least the jury sees that he had it on and that’s really the value of it, the probative value of it at this point is that he did turn it on, and that, I guess to rebut the 
6 presumption that this wasn’t, you know, the correct action or the complete investigation, whatever you want to call it. ¶ 11 The prosecutor questioned the officer about the body camera video, the officer testified there was a body camera video, and the body camera video was admitted without sound. B. Analysis ¶ 12 To the extent Lopez contends that the trial court erred by questioning the officer in camera, he waived any such claim. ¶ 13 The People do not assert waiver. However, waiver is an issue of preservation. See People v. Struckmeyer, 2020 CO 76, ¶ 4. “[A]n appellate court has an independent, affirmative duty to determine whether a claim is preserved and what standard of review should apply, regardless of the positions taken by the parties.” Forgette v. People, 2023 CO 4, ¶ 15 (quoting People v. Tallent, 2021 CO 68, ¶ 11); see also People v. Carter, 2021 COA 29, ¶¶ 13-14 (noting the independent obligation to determine preservation and concluding that the claim of error asserted by the defendant was waived). ¶ 14 A waiver is “the intentional relinquishment of a known right or privilege.” People v. Rediger, 2018 CO 32, ¶ 39 (quoting Dep’t of 
7 Health v. Donahue, 690 P.2d 243, 247 (Colo. 1984)). “[W]aiver extinguishes error and therefore any appellate review.” Richardson v. People, 2020 CO 46, ¶ 24. ¶ 15 After the trial court explained that it was going to question the officer in camera in order to get more information to make his ruling, defense counsel replied, “sure.” Consequently, Lopez has waived any claim that the court’s questioning of the officer in camera was error. Given the waiver, we do not review this assertion of error. ¶ 16 Lopez also contends that the trial court abandoned its role as a neutral arbiter when it persuaded the prosecutor to ask certain questions of the officer and admit the body camera video — actions which the prosecutor explicitly said he was not intending to do — with the express purpose of bolstering and rehabilitating the officer’s testimony. ¶ 17 As a threshold matter, the parties dispute the applicable standard of review. But we do not need to decide that question because there was no error. But see People v. Hall, 2021 CO 71M, 
8 ¶¶ 16-17 (applying abuse of discretion review to claims of judicial misconduct in a bench trial). ¶ 18 When a trial court elects to raise matters to promote a just determination of a trial, it must take great care to ensure that it does not become an advocate. See People v. Martinez, 185 Colo. 187, 189, 523 P.2d 120, 121 (1974). The test is whether the trial court judge’s conduct so departed from the required impartiality as to deny the defendant a fair trial. People v. Adler, 629 P.2d 569, 573 (Colo. 1981). ¶ 19 The trial court’s ruling that the prosecutor could ask the officer about the body camera video and try to introduce it into evidence did not so depart from the required impartiality as to deny Lopez a fair trial. This decision, and the discussion that led to it, occurred outside the presence of the jury. See id. (noting that the trial court’s suggestions to the prosecutor were made out of the presence of the jury and finding no breach of the impartiality standard). And the court’s ruling permitted, but did not require, the prosecutor to ask the officer questions about the body camera 
9 video and try to admit it into evidence even though it was not on the exhibit list. ¶ 20 The trial court made this ruling instead of finding that defense counsel had opened the door to the jury hearing about the gun that Lopez had when he exited the truck. The court determined that, while defense counsel’s question did not open the door that far, it had potentially left the jury with an inaccurate view of the evidence — that there was no body camera video. In essence, the ruling was an effort to ensure a fair hearing while protecting Lopez from the admission of prejudicial evidence. ¶ 21 Thus, because the trial court did not assume the role of an advocate, it did not deprive Lopez of a fair trial. See id. (concluding that the trial court’s action in pointing out a possible deficiency in the prosecution’s case did not result in a breach of the standard for impartiality). III. Prosecutorial Misconduct ¶ 22 Lopez next contends that numerous unobjected-to remarks made by the prosecutor during closing statements constituted 
10 prosecutorial misconduct. We conclude that the trial court did not reversibly err by allowing the statements, either because the statements were not improper or because any error was not plain. A. Standard of Review and Applicable Law ¶ 23 We engage in a two-step analysis when reviewing claims of prosecutorial misconduct. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the conduct was improper based on the totality of the circumstances. Id. In doing so, we evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. People v. Conyac, 2014 COA 8M, ¶ 132. Next, we consider whether such actions warrant reversal under the applicable standard of review. Wend, 235 P.3d at 1096. B. Analysis 1. Elements of Vehicular Eluding ¶ 24 Lopez contends that the prosecutor told the jury that vehicular eluding was a strict liability crime and failed to concede that failing to stop might not be reckless behavior when he said that 
11 [t]he fact that the defendant sped into a dead end. That doesn’t matter. As soon as he starts accelerating, doesn’t stop, as soon as he starts accelerating away, that is eluding, that is his reckless conduct. He didn’t know he was going to hit a dead end. Fine. Doesn’t matter. As soon as that gas pedal goes down to get away, boom, that’s the crime. Now, if it continues on for miles, that is still the crime. If you continue on to a dead end, that is still a crime. It happens when the decision is made and when the conduct starts. Viewed in context, the prosecutor was simply explaining that the fact that Lopez did not know that he was driving into a dead end does not mean that he did not act recklessly. The prosecutor later reviewed the elements for vehicular eluding for the jury and argued that Lopez acted recklessly when, in a residential area, he accelerated away from the police and ran a stop sign. The prosecutor also discussed the mental state of knowingly for vehicular eluding. See § 18-9-116.5(1), C.R.S. 2024. Thus, the prosecutor did not tell the jury that vehicular eluding was a strict liability crime. ¶ 25 Nor was the prosecutor required, as Lopez contends, to concede that in some circumstances failing to stop might not be 
12 reckless behavior. Rather, as noted, the prosecutor argued, based on the facts of this case, that Lopez acted recklessly when, in a residential area, he accelerated away from the police and ran a stop sign. See People v. Samson, 2012 COA 167, ¶ 31 (“Prosecutors may comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom.”). 2. Denigration of Defense Counsel ¶ 26 Lopez also contends that the prosecutor committed misconduct in rebuttal closing by denigrating defense counsel. We disagree. ¶ 27 Remarks made for the obvious purpose of denigrating defense counsel constitute professional misconduct. People v. Jones, 832 P.2d 1036, 1038 (Colo. App. 1991). Such remarks include those intended to imply that opposing counsel does not have a good faith belief in the innocence of their client. Id. at 1039. These kinds of statements are impermissible because they serve no legitimate purpose and impermissibly divert the attention of the jurors from the factual issues concerning the defendant’s guilt. Id. 
13 ¶ 28 In support of his contention, Lopez cites the prosecutor’s statement that “[t]he defense can ask any questions they want. If I think it’s improper I object, the judge rules on it. He is an attorney, he’s not short for words. If you don’t like the answer, keep asking. The truck was stolen.” Lopez also objects to the prosecutor’s discussion of how the evidence supports the officers’ identification of Lopez and how there is a lack of evidence supporting Lopez’s theory that the officers could not identify him. Finally, Lopez cites the prosecutor’s statement that License plate, no report. I’m not going to blame a mom for helping her son. I sure hope that his mom — he is a bigger deal than I am, and he is a bigger deal than the police are, and the judge, and this whole thing. I’m not going to judge a mom for doing that. It’s almost a badge of honor. But we’re not here in the mom business. We are here in the evidence business. He did it. ¶ 29 None of these statements denigrated the defense or defense counsel. Rather, although inartful, the prosecutor was responding to defense counsel’s arguments that the officers could not identify Lopez, did not investigate the case thoroughly, and were not 
14 credible. See Samson, ¶ 31; People v. Denhartog, 2019 COA 23, ¶ 55 (noting that a prosecutor’s comments in direct response to defense arguments were not prejudicial misconduct). The prosecutor’s statements were also grounded in the evidence or lack thereof. Cf. People v. Esquivel-Alaniz, 985 P.2d 22, 23 (Colo. App. 1999) (“[C]omment on the lack of evidence confirming a defendant’s theory of the case is permissible . . . .”). Thus, we conclude there was no prosecutorial misconduct. 3. Opinion on Veracity and Guilt ¶ 30 Lopez also argues that three aspects of the prosecutor’s rebuttal closing argument constituted misconduct. Specifically, he contends that the prosecutor twice vouched for the police officers’ credibility and expressed his personal opinion that Lopez was guilty in a PowerPoint slide. We discern no reversible error. a. Vouching ¶ 31 Lopez first challenges the prosecutor’s statement during rebuttal that “[w]hen a witness answers, I don’t know, that is honest, okay? If somebody knows everything, whoa, whoa, whoa, this person is full of it, this person is not telling the truth. You ask 
15 a hard question, and someone says, I don’t know, well, that’s honest.” This statement was made in response to defense counsel’s closing argument that [s]imply put, when you get officers that say, I don’t recall, or, I don’t remember, in the legal business that is code word for I remember, I just don’t want to tell you, or that is code word for, I know, I just don’t want to tell you. Simply put, you know or you don’t know. ¶ 32 This was not misconduct. See Denhartog, ¶ 55; see also People v. Gilmore, 97 P.3d 123, 131 (Colo. App. 2003) (holding that, in response to defense comments challenging the quality of the investigation against defendant, prosecutor’s argument that officers “were honest when they admitted to the jury that they could not remember aspects of the investigation and the search” was fair comment on the testimony). ¶ 33 However, the prosecutor committed misconduct when he said in rebuttal closing, “[d]o the police officers get a benefit? No. The guy who is sitting over there is the guy who’s got skin in this. The police officers are off to the next case. They talk about what they did, they talk about it truthfully and they are done.” This statement 
16 was not tied to the evidence or the instructions and was essentially an assertion that police officers, by definition, tell the truth. As such, this was an improper expression of the prosecutor’s personal opinion about the police officers’ veracity. See Wilson v. People, 743 P.2d 415, 418 (Colo. 1987). ¶ 34 Because defense counsel failed to object, we review for plain error. See Wend, 235 P.3d at 1097. Plain error is error that is obvious and that “so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.” Garcia v. People, 2019 CO 64, ¶ 3 (quoting Hagos v. People, 2012 CO 63, ¶ 18). To qualify as obvious, the alleged error must be “so clear-cut, so obvious, that a trial judge should be able to avoid it without benefit of objection.” People v. Pollard, 2013 COA 31M, ¶ 39; see also People v. Fortson, 2018 COA 46M, ¶ 78. “Only prosecutorial misconduct which is “‘flagrantly, glaringly, or tremendously improper’ warrants reversal” under the plain error standard. Domingo-Gomez v. People, 125 P.3d 1043, 1053 (Colo. 
17 2005) (quoting People v. Avila, 944 P.2d 673, 676 (Colo. App. 1997)). ¶ 35 The fact that defense counsel did not object “may demonstrate defense counsel’s belief that the live argument, despite its appearance in a cold record, was not overly damaging.” People v. Van Meter, 2018 COA 13, ¶ 33 (quoting People v. Rodriguez, 794 P.2d 965, 972 (Colo. 1990)). The prosecutor was responding to defense counsel’s argument in closing that when police officers say “I don’t know” they are not being truthful. And because “[a] prosecutor is afforded considerable latitude in replying to an argument by defense counsel,” People v. Perea, 126 P.3d 241, 247 (Colo. App. 2005) (quoting People v. Wallace, 97 P.3d 262, 269 (Colo. App. 2004)), it is not surprising that the trial court did not intervene on its own when there was no objection to the comment. ¶ 36 Moreover, we do not believe the statement was prejudicial. It was a brief reference made during the prosecutor’s rebuttal argument. See People v. Villa, 240 P.3d 343, 358 (Colo. App. 2009). And what the officers testified that they did not know or did not 
18 recall was not material information to the vehicular eluding charge. One officer testified that he did not know if a photograph accurately depicted the aerial view of what the intersection looked like where the event took place, did not know how many lanes a particular street had, did not recall if the windows on the truck were tinted, did not recall if Emick said it was stolen, and did not recall if they put in the report that they learned the truck was not stolen. The other officer also testified that he did not know if they got information from Emick about whether the truck was stolen, did not know what the crime scene officers processed in the truck, did not know exactly how tall Lopez was determined to be when he measured while being booked at the police station, did not recall what Lopez’s mother said about the truck’s license plates, did not recall if he drew his weapon, did not remember the first name of the person to whom the plates were registered (but recalled that the last 
19 name was Lopez), and did not remember the brand of the car the plates were registered to (just that it was a silver van).
2 ¶ 37 Furthermore, the strength of the other evidence of guilt was strong. Both officers identified Lopez as the truck driver, the cell phone back panel found in the truck “match[ed]” the missing piece on the back of Lopez’s phone, and the license plate was registered to Lopez’s mother. Finally, both officers saw Lopez speed away from the police car and run the stop sign. See People v. Estes, 2012 COA 41, ¶¶ 42-43 (concluding that there was no plain error when evidence of guilt was overwhelming). ¶ 38 In sum, the error did not “cast serious doubt on the reliability of the judgment of conviction.” Garcia, ¶ 3 (quoting Hagos, ¶ 18). b. Opinion on Guilt ¶ 39 Finally, Lopez contends that the prosecutor expressed his personal opinion regarding Lopez’s guilt when he displayed a PowerPoint slide with the word “GUILTY” in red font and another 2 The officer also testified that he did not recall if he turned his body camera on or if the other officer did, but later clarified that he had turned his body camera on. 
20 slide with “Accountable” in yellow font. While we do not condone such a tactic, even if we were to assume it was error, we cannot say it was plainly so. Lopez cites no case — and we are aware of none — holding that these types of slides contravene clear Colorado law. See Pollard, ¶ 40 (an error is obvious if the challenged action contravenes Colorado case law). Indeed, a prosecutor is permitted to orally say that the defendant is guilty. See People v. Merchant, 983 P.2d 108, 115 (Colo. App. 1999) (concluding that prosecutor’s comment “that the ‘[defendant’s] guilty of the crime of theft,’ merely expressed the proposition that the evidence was sufficient to sustain a conviction” and was proper) (alteration in original). Lopez does not provide any basis to conclude that displaying in a slide what can be said out loud is somehow less permissible. Significantly, here, the prosecutor used the slides in conjunction with his argument about how the evidence established Lopez’s guilt. See People v. Tran, 2020 COA 99, ¶¶ 68-69. Thus, we discern no reversible error. 
21 IV. Cumulative Error ¶ 40 Finally, we reject Lopez’s contention that the cumulative effect of the trial errors denied him a fair trial. See Howard-Walker v. People, 2019 CO 69, ¶¶ 24-25. We have identified a single incidence of error and assumed the existence of a second. Even including the assumed error, we cannot conclude that “in the aggregate [the misconduct] show[s] the absence of a fair trial.” Id. at ¶ 26. V. Disposition ¶ 41 The judgment is affirmed. JUDGE GOMEZ and JUDGE KUHN concur.