24CA0134 Peo v Ramirez 05-14-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0134
Jefferson County District Court No. 23CR96
Honorable Randall C. Arp, Judge
Honorable Jeffrey R. Pilkington, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Simon Alfredo Ramirez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE MOULTRIE
Dunn and Harris, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 14, 2026

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Eric A. Samler, Alternate Defense Counsel , Hollis A. Whitson, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Simon Alfredo Ramirez, appeals the judgment of conviction entered on a jury verdict finding him guilty of three counts of attempted first degree murder and two counts of second degree assault. We affirm.

I.    Background

¶ 2    Joshua Gonzales, Jeremiah Lesperance, and Teiara Landon were walking near a Regional Transportation District (RTD) light rail station in Lakewood when they got into an argument with an unknown man (alleged shooter). Gonzales said that he and the alleged shooter exchanged threats, which included the alleged shooter showing that he had a gun and Gonzales acting like he had a gun as well.

¶ 3    The alleged shooter was accompanied by a friend who tried to get the alleged shooter to walk away from the situation. Similarly, Landon and Lesperance tried to deescalate the situation and convinced Gonzales to leave. Shortly after Landon, Lesperance, and Gonzales began walking away, the alleged shooter fired his gun at them, hitting Gonzales and Lesperance. The alleged shooter fled the scene, and Lesperance ran to seek help.

¶ 4     To identify the alleged shooter, Detective Sarah Poellot obtained video from the city's traffic camera system and RTD's camera system.  Detective Poellot was able to see the shooting on the RTD videos and then, in combination with video from traffic cameras, track the alleged shooter's movements before and after the shooting.  The alleged shooter appeared to be at a motel before and after the shooting, so, a few days after the shooting, Detective Poellot went to the motel and obtained video recordings from its security cameras.

¶ 5     Detective Poellot said that on the night of the shooting, the alleged shooter appeared to leave from and return to a room in which a known resident and employee of the motel — Regina Benavidez — lived.  A few weeks later, Detective Poellot spoke with Benavidez about the man they had seen in the videos leaving her room before the shooting and returning after.  Benavidez identified Ramirez as that man.

¶ 6    The prosecution charged Ramirez with, among other things, three counts of attempted first degree murder and two counts of second degree assault.[1]

¶ 7    The case proceeded to a jury trial, after which the jury found Ramirez guilty as charged. Ramirez now appeals and argues the trial court denied him a fair trial because the court (1) "assumed the role of [an] advocate and violated [his] right to an impartial judge" by instructing the prosecutor on how to authenticate the motel and RTD videos; (2) abused its discretion by admitting into evidence the motel videos; and (3) denied his request for substitute counsel.

¶ 8    For the reasons discussed below, we disagree and therefore affirm the judgment.

## II.    Ramirez Hasn't Demonstrated That the Court Was Biased

### A.    Additional Background

¶ 9    During the trial, defense counsel objected to the admission of the RTD and motel videos based on a lack of authentication. The prosecutor sought to authenticate those videos through the

---

[1] The prosecution also charged Ramirez with three counts of menacing but later dismissed those charges before trial.

3

testimony of Detective Poellot. After hearing arguments from the prosecutor and defense counsel, the court admitted the motel videos and contingently admitted the RTD videos subject to testimony from a different witness that could verify the accuracy of the videos.

¶ 10     Detective Poellot testified that a traffic camera faced the front portion of the motel. She collected videos from the motel's security system, which she said she was very familiar with because she had previously collected videos from that system multiple times. The detective said that the traffic camera videos corroborated what she saw on the motel videos regarding the movement of people the night of the shooting but that the motel videos provided more detail because the motel cameras were closer.

¶ 11     When the prosecutor sought to admit the motel videos based on Detective Poellot's testimony, defense counsel objected because Detective Poellot wasn't present and didn't view any of the videos at the time they were recorded. Defense counsel also argued that the prosecution didn't attempt to have Benavidez or any of the other individuals seen on the motel videos testify to authenticate the videos.

¶ 12    Noting that "the burden to authenticate evidence is not high," the prosecutor argued that the traffic camera videos, which the court had already admitted into evidence,[2] showed the alleged shooter "in all corners of the [motel]" and corresponded with the motel videos.

¶ 13    The court then had the following exchange with the prosecutor:

> The Court: [Prosecutor], can you explain to me why I don't have somebody from the [motel] testifying to the accuracy of their recording system and the scenes depicted in this video . . . and/or, I guess most importantly, why none of the witnesses who testified yesterday[3] were asked to review the video[s] of the incident and identify the individuals and the accuracy of th[e] video[s]?
>
> Why are we trying to back door these videos when witnesses in this case were available to authenticate or provide further authentication for these videos . . . . Why have I not — and why am I not going to receive any of that information?
>
> Prosecutor: Your Honor, in regards to this video system, particularly the [motel], I think Detective Poellot is probably as familiar with

---

[2] Ramirez doesn't challenge the court's ruling that there was sufficient foundation to admit those videos.
[3] The prior day's witnesses included the three victims and Benavidez.

this system as the people that work at that motel given how many times she's downloaded from it and that she can verify its reliability.

¶ 14    Persuaded that the traffic camera system corroborated the accuracy of what was depicted in the motel videos, the court admitted the videos and ruled that any questions regarding their authenticity impacted the weight the jury afforded them, not their admissibility.

¶ 15    Turning to the RTD videos, defense counsel objected to the court admitting them through Detective Poellot's testimony because she didn't download them and there was no "duplicative" video from the traffic camera system demonstrating their reliability.

¶ 16    The court asked the prosecutor which witness was going to testify that the RTD videos accurately and fairly depicted what they purported to show.  The prosecutor said that there had been extensive testimony from Landon and others that corroborated the RTD videos.  The court pressed the prosecutor regarding why she hadn't called certain witnesses to authenticate the RTD videos.  The court said,

> [T]he normal process is one of the victims
> reviews the videos, and then on the stand
> says, yep, those videos accurately and fairly

> depict what happened on the night in
> question.
>
> . . . .
>
> I don't have that corroboration regarding those
> RTD videos.  Why don't I have somebody from
> RTD here to tell this jury, this is our system,
> this is what it shows, it's accurate, this is what
> I downloaded?  Why aren't they here?  This is
> an attempted murder case.

¶ 17    The prosecutor said it was probably "best practice" to have a person from RTD or one of the victims provide testimony for authentication purposes but argued that the court had already received into evidence "numerous corroborative details" of the events depicted in the RTD videos.  The court then said to the prosecutor,

> [I]t's not even just the preferred way.  It is the
> standard and accepted way to admit videos, is
> to have somebody testify as I indicated[.]  [S]o
> I'm not happy with the way this is going[,] and
> I'll decide whether I'm going to admit [the RTD
> videos] when I hear the testimony[,] and I hear
> the objection by [defense counsel].  But it's not
> the way it's supposed to be done.

¶ 18    The court conditioned the admission of the RTD videos upon the prosecution's ability to produce a witness who could authenticate them and said it would declare a mistrial if the prosecution couldn't get the RTD videos admitted.  The court later

7

allowed the prosecution to recall Landon who then verified the accuracy of the RTD videos.

B.    Applicable Legal Principles

¶ 19     A criminal defendant has a constitutional right to have an impartial court at all stages of the proceedings. *See Sanders v. People*, 2024 CO 33, ¶¶ 27-28. While a trial court has a duty to maintain an impartial forum, it also has wide discretion in conducting a trial, including with respect to the order and presentation of evidence. *People v. Hall*, 2021 CO 71M, ¶ 16; *see also* CRE 611(a) (requiring a trial court to "exercise reasonable control over the mode and order of . . . presenting evidence" to make the "presentation effective for the ascertainment of the truth" and to maximize time efficiency).

¶ 20     But when a trial court exercises its discretion over the mode and order of evidence presentation, it must ensure it doesn't become an advocate. *See People v. Adler*, 629 P.2d 569, 573 (Colo. 1981); *Hall*, ¶ 39 (holding that the trial court didn't abuse its discretion when it requested argument from both sides regarding properly admitted evidence during a bench trial)*; see also People v. Martinez*, 523 P.2d 120, 121 (Colo. 1974) (concluding that the trial

8

court acted as an advocate rather than a neutral arbiter when it took on an active role in the prosecution's case by calling witnesses, presenting evidence, and cross-examining defense witnesses).

¶ 21 Because Ramirez asserts that the court acted as an advocate by instructing the prosecution on how to admit certain video exhibits, we review the court's actions for an abuse of discretion. *See Hall*, ¶ 16. A court abuses its discretion when it acts in a manner that is manifestly arbitrary, unreasonable, or unfair or based on an erroneous understanding or application of the law. *People v. McFee*, 2016 COA 97, ¶ 17. And when a defendant alleges that a trial court is biased, "they must demonstrate 'more than mere speculation concerning the possibility of prejudice.'" *Hall*, ¶ 17 (quoting *People v. Coria*, 937 P.2d 386, 391 (Colo. 1997)). The defendant must demonstrate that "the trial [court]'s conduct so departed from the required impartiality as to deny [him] a fair trial." *Adler*, 629 P.2d at 573.

## C.     Analysis

¶ 22 Ramirez argues that the trial court assumed the role of an advocate and violated his right to an impartial tribunal and fair trial by instructing the prosecutor on how to authenticate the motel and

9

RTD videos, rather than sustaining defense counsel's objections. We disagree for two reasons.

¶ 23     First, we're unpersuaded by Ramirez's reliance on *Martinez* and *People v. Hrapski,* 718 P.2d 1050 (Colo. 1986), to support his argument that the court abandoned its role as a neutral arbiter and became an advocate. In *Martinez,* the prosecutor failed to appear at a suppression hearing, so the court took it upon itself to act as the prosecutor by, among other things, calling and questioning witnesses, which included cross-examining defense witnesses. 523 P.2d at 121. And in *Hrapski,* the trial court dismissed habitual criminal counts against the defendant after it sua sponte reviewed prior plea transcripts and determined that the defendant didn't enter the pleas knowingly or voluntarily. 718 P.2d at 1054.

¶ 24     We disagree with Ramirez that the court's actions here rose to the level of partiality demonstrated by the trial courts in *Martinez* and *Hrapski.* Instead, the court engaged in an extended conversation with both the prosecutor and defense counsel about what it considered to be the "standard" way to authenticate video evidence. Yet the court only admitted the motel videos after it determined they were sufficiently corroborated by the traffic camera

videos. This belies Ramirez's conclusory assertion that the court "laid out for the prosecutor step by step instructions on how to lay foundation for the videos" that the prosecution then followed to admit the motel videos.

¶ 25 Viewing the record as a whole, and despite the court's apparent preference for how the motel videos should be authenticated, we conclude the court didn't abandon its role as a neutral arbiter: It considered both parties' positions regarding the evidence necessary to support authentication and assessed whether there already was sufficient evidence in the record to authenticate the motel videos before it ultimately admitted them.

¶ 26 Moreover, all of the court's comments about the proper way to authenticate the videos were made outside the presence of the jury. And although the court foreshadowed the potential consequence to the prosecution's case if it were unable to authenticate the RTD videos, the court neither advocated for nor against their admission. *See People v. Acosta,* 2014 COA 82, ¶¶ 98-99 (a trial court's comments, made outside the presence of the jury, about the admissibility of challenged evidence weren't improper where they neither advocated for nor against the admission of the evidence).

¶ 27    Likewise, despite the court noting that witnesses who had previously testified could've authenticated the RTD videos, it didn't direct the prosecution to call Landon or any other particular witnesses to authenticate them. *See id.* Rather, the court exercised its discretion to allow the prosecutor to recall Landon to authenticate the RTD videos. *See Hall*, ¶ 16; CRE 611(a). Given that defense counsel had vigorously cross-examined Landon during her prior testimony, the court had partially sustained defense counsel's objection to the admission of the RTD videos pending further evidence, and the court gave defense counsel the opportunity to further question Landon when she was recalled to authenticate the RTD videos,[4] we discern no abuse of the court's discretion.

¶ 28    Second, Ramirez hasn't asserted — let alone demonstrated — that the trial court was biased against him. *See Hall*, ¶ 17. Rather, as already noted, his argument is focused on the court's exchange with the prosecutor regarding authentication. Viewing the record as a whole, we can't otherwise conclude that the court was biased

---

[4] Ramirez's defense counsel didn't ask Landon any additional questions.

against him or that the "[court's] conduct so departed from the required impartiality as to deny [him] a fair trial." *Adler*, 629 P.2d at 573; *People v. Jennings*, 2021 COA 112, ¶ 28 ("The record must establish such bias clearly; mere speculative statements and conclusions are not enough.").

¶ 29    Accordingly, we reject Ramirez's contention that he was denied a fair trial because the court was impartial and biased against him.

### III.    The Court Didn't Abuse Its Discretion by Admitting the Motel Videos

#### A.    Applicable Legal Principles

¶ 30    CRE 901(a) governs the foundational requirements for authenticating a video recording. *See People v. Abad*, 2021 COA 6, ¶ 50; *see also Gonzales v. People*, 2020 CO 71, ¶ 27 (holding that, before a "recording may be admitted into evidence, it must be authenticated"). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a). However, "[t]he burden to authenticate 'is not high — only a prima facie showing is required.'" *Gonzales*,¶ 27 (quoting *People v. Glover*, 2015

COA 16, ¶ 13).  CRE 901(b) provides a nonexhaustive list of ten ways a proponent may authenticate evidence in conformity with the requirements of the rule.

¶ 31     Furthermore, CRE 104(a) grants the trial court wide discretion as the evidentiary gatekeeper.  *See* CRE 104(a) (explaining that the court determines foundational questions related to the admissibility of evidence).  It is then the jury's role as the fact finder to determine whether a video is authentic.  *See Gonzales*, ¶¶ 6, 27, 42; *see also Glover*, ¶ 13 ("[A] 'district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic.'" (quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014))).

¶ 32     Thus, in *Gonzales*, ¶ 39, the supreme court rejected a "rigid formula for authentication" because it doesn't "comport with the more liberal requirements of the modern rules of evidence."   at. Instead, the *Gonzales* court adopted a flexible approach, holding that

> when offering a . . . recording into evidence,
> the proponent need only provide evidence
> sufficient to support a finding that the . . .

recording is what he or she claims it to be. CRE 901(a). Testimony establishing the recording's accuracy or the reliability of the recording process, while relevant in some circumstances, is unnecessary in the ordinary course to authenticate a . . . recording under CRE 901.

*Id.* at ¶ 43.

¶ 33     We review a court's evidentiary rulings for an abuse of discretion. *Id.* at ¶ 25.

## B.     Analysis

¶ 34     Ramirez argues that the court erred by admitting the motel videos[5] because no one (1) testified about the accuracy of the videos; (2) who was in the videos testified; and (3) from the motel testified regarding the reliability or functionality of the motel's recording system. We reject his arguments for three reasons.

¶ 35     First, we disagree that "no one testified about the accuracy of the videos" because Detective Poellot did. She confirmed that the motel videos were "fair and accurate representations of what was going on at that time," which was based in part on her knowledge

---

[5] Although defense counsel objected to the admission of both the motel and RTD videos based on a lack of authentication, Ramirez challenges only the court's admission of the motel videos on appeal.

from downloading and reviewing the traffic camera videos that showed the front of the motel.

¶ 36　　Second, CRE 901 doesn't require that someone from a video testify to authenticate the video; rather, the prosecution needed only to provide evidence sufficient for the court to find that the videos were what they claimed to be. *See Gonzales*, ¶¶ 27, 43; *see also Abad*, ¶ 50 (applying the holding in *Gonzales* to videos). Ramirez's proposed construction of CRE 901 directly contradicts the supreme court's adoption of a flexible approach. *See Gonzales*, ¶ 43.

¶ 37　　Third, while it's true that no one from the motel testified about the accuracy, reliability, or functionality of its security system, such testimony wasn't required. *See id.* at ¶ 38 (overruling *People v. Baca*, 2015 COA 153, ¶ 30, which required testimony from a witness to verify the reliability of the recording process if there wasn't testimony from a witness with personal knowledge of the content of a recording). And in any event, Detective Poellot testified about the accuracy of the motel's security system based on her prior familiarity with it. Her testimony was sufficient to support the court's finding that the motel videos were what the prosecution

16

claimed them to be — videos from the motel's premises before and after the shooting — for admissibility purposes. *See id.* at ¶ 6. Thus, we can't conclude that the court abused its discretion when it determined that the prosecution properly authenticated the motel videos through Detective Poellot's testimony. The ultimate determination of whether the motel videos were authentic rested with the jury. *See id.* at ¶ 42; *Glover*, ¶ 13.

## IV. The Court Didn't Abuse Its Discretion When It Denied Ramirez's Request for Substitute Counsel

### A. Additional Background

¶ 38 A few months before trial, Ramirez indicated he wanted a new attorney and filed a "Motion to Dismiss Ineffective Assistance of Counsel." After a *Bergerud*[6] hearing, the court denied Ramirez's request for a new court-appointed attorney.

¶ 39 At the *Bergerud* hearing, Ramirez stated he wanted substitute counsel because (1) his case had "been looked at wrong"; (2) he wanted defense counsel to explore a self-defense theory, but

---

[6] A court holds a *Bergerud* hearing when a defendant objects to court-appointed counsel without providing a sufficiently detailed motion on which the court can base its decision whether to appoint substitute counsel. *See People v. Bergerud*, 223 P.3d 686, 694-95 (Colo. 2010).

17

counsel didn't; and (3) his Webex meetings with counsel were overheard by others.

¶ 40     Defense counsel told the court that he was "concerned about a communication breakdown" and that Ramirez didn't trust him but that there wasn't a conflict. Counsel said Ramirez cut most of their communications short. Counsel also said that Ramirez "alluded, multiple times, that there's more going on in the situation," but that Ramirez hadn't provided him the information he was alluding to. Lastly, defense counsel addressed his investigation and consideration of a possible self-defense theory but said that, based on the evidence in discovery, he didn't think that there was "even a scintilla to justify a self-defense claim."

¶ 41     The court asked Ramirez whether it was true that he would end conversations with defense counsel. Ramirez said that he wasn't going to answer if defense counsel was only going to bring him a plea deal for 100 years. The court then asked Ramirez, "What if another attorney would tell you that?" And Ramirez said that he would "[p]robably be the same way."

¶ 42     The court denied Ramirez's request and found that there wasn't a conflict that would lead to an unjust verdict or a complete

18

breakdown of communications. The court further found that Ramirez had created any breakdown in communications because he would either end or leave conversations with counsel, which was insufficient to support his request for substitute counsel.

## B.    Applicable Legal Principles

¶ 43    A defendant's right to legal counsel is protected under both the United States and Colorado Constitutions. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *see also People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989) (noting that the right to counsel is "considered essential to a fair trial"). However, this right to counsel "guarantees only competent representation[] and does not necessarily include 'a meaningful attorney-client relationship.'" *Arguello*, 772 P.2d at 92 (quoting *Morris v. Slappy*, 461 U.S. 1, 14 (1983)). When a defendant objects to continued representation by his court-appointed counsel, the court is obligated to inquire into the reasons for the dissatisfaction. *Id.* at 94. But the defendant carries the burden to demonstrate that good cause exists for the court to appoint substitute counsel, which includes "a conflict of interest, a complete breakdown of communication[,] or an irreconcilable conflict which

19

leads to an apparently unjust verdict." *Id.* (quoting *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir.1981)).

¶ 44 In *People v. Bergerud*, 223 P.3d 686, 695 (Colo. 2010), the supreme court established a four-factor test to guide a court's inquiry into whether substitute counsel is warranted. As relevant here, two of those factors are whether the defendant substantially and unreasonably contributed to the underlying conflict and whether the attorney-client conflict was so great that it resulted in a total lack of communication or otherwise prevented an adequate defense. *Id.*

¶ 45 We review a court's denial of a defendant's request for substitute counsel for an abuse of discretion.[7] *Id.* at 696 n.4. We won't disturb the court's ruling if it has record support. *People v. Tresco*, 2019 COA 61, ¶ 16.

---

[7] Despite acknowledging this standard, Ramirez asserts we should apply a "simple error" standard in this case. *See Henderson v. United States*, 568 U.S. 266, 282 (2013) (Scalia, J., dissenting) (noting that "a simple-error rule" means "all trial-court mistakes affecting substantial rights can be corrected on appeal"). We decline to do so.

## C. Analysis

¶ 46    Ramirez argues that good cause existed for his request for substitute counsel, and the court violated his right to counsel by "forcing [him] to be 'represented' by conflicted counsel." He argues that there was a serious breakdown in communication and irreconcilable conflicts with his defense counsel. We disagree.

¶ 47    The court found — with record support — that Ramirez created whatever communication breakdown existed between him and his counsel. Regardless, while defense counsel said that there was a "communication breakdown," counsel never said that he and Ramirez were no longer communicating at all. Counsel also said that he didn't believe a conflict existed. Furthermore, Ramirez acknowledged that he probably would have the same communication difficulties with any attorney who didn't see the case the same way he did. Thus, Ramirez failed to carry his burden to demonstrate that good cause existed to grant his request for substitute counsel. *See Arguello*, 772 P.2d at 94.

¶ 48    Accordingly, because Ramirez failed to demonstrate a complete breakdown of communication with his counsel to which he didn't substantially or unreasonably contribute, the court didn't abuse its

21

discretion by denying his request for substitute counsel. *See Bergerud*, 223 P.3d at 695.

## V. Disposition

¶ 49 The judgment is affirmed.

JUDGE DUNN and JUDGE HARRIS concur.